No. 33,410

LILLIAN ELIZABETH HOHMANN, *Appellee*, v. L. C. JONES, Sole Trader, d.b.a. L. C. JONES TRUCKING COMPANY, *Appellant*.

(72 P. 2d 971)

Opinion filed November 6, 1937.

*J. W. Smyth*, of Wichita, and *Sam S. Gill*, of Oklahoma City, Okla., for the appellant.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt*, all of Wichita, for the appellee; *S. P. Jones, Franklin Jones* and *C. A. Brian*, all of Marshall, Tex., of counsel.

The opinion of the court was delivered by

HARVEY, J.: Plaintiff brought this action to recover damages for the death of her husband, alleged to have been caused by the negligence of defendant. The jury returned a verdict for plaintiff for $2,250. Defendant's motion for a new trial was overruled. Plaintiff's motion for a new trial as to the amount of damages only was sustained. Defendant has appealed. The principal question presented by the appeal is whether under the evidence plaintiff is entitled to recover any sum. This was raised by a demurrer to the evidence, by a motion for a directed verdict and by various other motions at the trial. Appellant also contends the court erred in overruling his motion for a new trial and in granting plaintiff's motion for a new trial limited to the amount of damages.

The pertinent facts disclosed by the record may be summarized as follows: Plaintiff's husband, John Paul Hohmann, was an employee of the Noble Drilling Company, which was drilling oil wells on a lease in Reno county. One of the wells had been drilled in, and the pipe pulled, which the drilling company desired to have hauled and racked at a place on the lease some distance from the

well. Defendant was in the business of furnishing trucks for heavy hauling. The drilling company employed defendant to furnish trucks, with drivers, to haul this casing. The truck being used at the time Hohmann sustained his fatal injury was a C-35 International, with an "A" frame, equipped with a winch, drum, cable, crane and pulleys. A short chain was attached to the end of the cable, and a hook was attached to the other end of the chain. On April 4, 1935, defendant sent this truck and a driver to move the casing which had been taken from the well. This was four-inch pipe, in thirty-foot joints, each of which weighed between 500 and 600 pounds. In handling the pipe the truck was driven up to where the pipe was, near the well. The cable, with a chain on the end of it, would be lowered from the crane on the truck, and an employee of the Noble Drilling Company would put this chain and cable around several joints of the pipe near the center. The entire bundle of pipe would then be lifted three to five feet in the air, by power from the truck. The truck would then be driven to the place where the pipe was to be racked and the bundle of casing lowered with the power from the truck. Hohmann and another employee of the Noble Drilling Company were to rack the pipe properly as the bundle was lowered. The men began the work after noon. They had about 120 joints of pipe to move and rack, and had been hauling eight or more joints at a load. On the last load there were four joints in the bundle, but one of these had an iron collar, which weighed about 100 pounds, on the end of it. This load had been carried to the place where the pipe was to be racked and the truck had stopped, but before the operator of the truck started to lower the bundle of pipe the chain, or some part of it, broke, letting the pipe fall on Hohmann, causing injuries from which he died a few hours later.

Plaintiff alleged defendant's negligence to be in equipping and operating the truck and winch with a chain of insufficient strength, or in a defective condition, so as to make the same unsafe and dangerous to persons around the same while the winch was in operation; and further alleged that the truck, winch and chain were exclusively in the possession of defendant, and that plaintiff had no means of knowing in what particular the same was defective, but that the facts concerning such defect were in possession of defendant, and that had the chain and winch been in a satisfactory condition for its intended use the same would not have broken and caused the injury and death of her husband.

Defendant's answer denied any negligence on his part, alleged that all it had to do about moving the casing was to furnish a truck with a driver, who was under the direct orders and supervision of the Noble Drilling Company; that the chain that broke was a new one, having been used only about nineteen days, and apparently was in perfect condition on the day it broke; that it had a lifting and carrying capacity of twenty lengths of such casing as was being moved, and had been carrying much heavier loads all afternoon prior to the time it broke; that it is not unusual in this work for chains such as were used to break while lifting or carrying oil pipe; that this fact is well known to experienced oil-field workers, who are trained always to push suspended pipe away from them so as to avoid injury such as possible breakage, and that Hohmann was an experienced oil-field worker; that Hohmann was guilty of negligence in that he took hold of the pipe and pulled it toward him, and that at the same instant the end length of the chain to which the end hook was fastened broke, and the load of pipe fell, causing his injury and death. Defendant further alleged that as to him and his truck, with equipment and driver, Hohmann was a mere licensee, to whom defendant owed no duty other than not willfully to injure him.

The evidence on behalf of plaintiff followed substantially the facts above stated and disclosed the part of the chain which broke was what is called a "cold shut." As this trucking outfit was rigged, this was used to attach the hook to the end of the chain, the other end of which was attached to the cable. It was a piece of soft steel rod bent in the shape of a link of the chain, with overlapping ends. It had been passed through a hole at the head of the hook and through the end length of the chain, and the overlapping ends hammered together, not welded. These had spread apart so as to permit the chain and the hook to separate, letting the load of pipe fall. Hohmann and another workman of the Noble Drilling Company were together near one end of the rack when defendant's driver drove up to the rack with the load of four pipe and stopped at or near the place where the pipe was to be lowered. The four joints of pipe, tied together near the center, were spread out somewhat toward the ends, and the load was swinging a little as it was suspended in the air where it was being held. Hohmann started to walk to the other end of the rack to assist in racking the pipe. He had passed by the center of the bundle of pipe, which was being held high enough that he could have walked under it, and had proceeded to

within eight or ten feet of the end of the bundle when the chain broke, or, more accurately, as it was later learned, the cold shut gave way and the four joints of pipe fell on him, causing fatal injuries. No one saw the pipe fall. There is no evidence that Hohmann had taken hold of the pipe, or touched it, before it fell. Those nearby heard him call for help. He was then on the ground, all four joints of pipe were lying across his body, and he was struggling to free himself. The truck and all its rigging, including the cable, chain, cold shut and hook, were owned by defendant, and at the time of the injury were under the control of defendant and his servant, the truck driver. There was also evidence as to the age, health, life expectancy and earnings of deceased, and plaintiff's relation to him.

Defendant's demurrer to this evidence was overruled, and he complains of that ruling. It seems clear that defendant owed to the deceased the duty of due care with respect to the truck, with its equipment and driver, which he furnished. The applicable rule is well stated by the American Law Institute, section 408, Restatement of Torts, as follows:

"One who leases a chattel as safe for immediate use is subject to liability to those whom he should expect to use the chattel, or to be in the vicinity of its probable use, for bodily harm caused by its use, in a manner for which, and by a person for whose use, it is leased, if the lessor fails to exercise reasonable care to make it safe for such use or to disclose its actual condition to those who may be expected to use it."

On this point appellant cites *Toomey v. Wichison Industrial Gas Co.*, 144 Kan. 534, 61 P. 2d 891. The case is not in point. Under no theory could Hohmann be said to be a mere licensee. He was an employee of the Noble Drilling Company, which was having the pipe moved and racked; his work as such employee was to assist in racking the pipe; it was necessary for him to be at the place where the pipe was to be racked; hence he was there in discharge of the duties for which he was employed. Defendant was not employed to rack the pipe, or to furnish men for that work, and he knew men employed by the drilling company would be there to perform those duties. As to such men he owed the duty of due care in the furnishing and handling of his truck and equipment.

Appellant contends his demurrer to plaintiff's evidence should have been sustained for the reason that it showed no specific act of negligence on the part of defendant. Plaintiff did not allege specific acts of negligence; she alleged the facts as a result of which her husband was fatally injured; that this resulted from defendant's negli-

gence, and that she did not know in what particular the defendant was negligent. The evidence supported these allegations. The real question is: Are the facts shown of such a character that a jury, or trial court, might reasonably conclude the fatal injury would not have happened if defendant had used due care? In other words: Is this a case in which the doctrine of *res ipsa loquitur* is applicable? We need not go into a lengthy discussion of that phrase, or its use in negligence cases. That was done in *Mayes v. Kansas City Power & Light Co.*, 121 Kan. 648, 249 Pac. 599. (See, also, vol. 3, Kansas Bar Journal, p. 158.) Repeatedly, the doctrine has been applied under facts quite similar to those presented here. (*Woods v. Kansas City, K. V. & W. Rld. Co.*, 134 Kan. 755, 8 P. 2d 404; *Koskela v. Albion Lumber Co.*, 25 Cal. App. 12, 142 Pac. 851; *Graham v. Badger*, 164 Mass. 42, 41 N. E. 61; *Golden v. Mannex*, 214 Mass. 502, 101 N. E. 1081; *LaBee v. Sultan Logging Co.*, 47 Wash. 57, 91 Pac. 560; *El Paso Foundry & Machine Co. v. De Guereque*, 46 Tex. Civ. App. 86, 101 S. W. 814; *Folk v. Schaeffer*, 186 Pa. St. 253, 40 Atl. 401; *Artificial Ice, etc., Co. v. Waltz*, 86 Ind. App. 534, 146 N. E. 826; *Wyldes v. Patterson*, 31 N. D. 282, 153 N. W. 630.)

We think the doctrine was applicable here. This view accords with the ruling of the trial court.

Defendant then went forward with his evidence, to the effect that he bought the truck and equipment new in March, and that it was first put in use at McPherson, Kan., about March 20, and that it appeared to be in good condition on April 4, when it was sent to haul the pipe; that the equipment for the truck, particularly the cable, chain, cold shut and hook, were purchased new from an oil-well supply company at Oklahoma City, and that the same was standard equipment for use in the oil fields, and the kind usually used for hauling heavy material. In rebuttal on that point it was shown that while the oil-well supply company sells that kind of equipment, if a purchaser desires to buy it, they have a better and stronger method of fastening the hook onto the chain by having the cold shut of the same or heavier or stronger material, and by having the overlapping ends of it electrically welded together; and that a cold shut such as defendant used to attach the hook to the chain, ordinarily was carried in the field for temporary repairs for broken chains. Defendant's witnesses also testified that the cold shut, such as was in use on this occasion, ordinarily held unless the ends which had been hammered together were pried apart; that this was sometimes done when

several joints of pipe, tied together near the center, were pulled apart at the ends. Defendant expressed it as his opinion that Hohmann must have taken hold of the ends of the joints of pipe and pulled them apart. There was no evidence to that effect, and defendant did not see the thing happen. There is evidence that the joints of pipe were spread apart at the ends, perhaps all the time they were being moved to the place where they were to be racked, and that this was true of other loads hauled that day. Defendant testified that when the pipe was first tied together and picked up, if the end spread apart, it was the duty of the driver of the truck to stop and let his load down and have a rope or small chain tied around one end of the bundle of pipe so as to hold the joints of pipe parallel with each other. He later qualified this statement with respect to the duty of the driver, but there was testimony of other witnesses that the pipe should not be hauled when the ends were spreading apart, and that doing so would cause the cold shut to be pried apart. There was also evidence that it was not unusual for a cable, chain, cold shut, or hook to break while heavy materials were being handled, and defendant testified that he thought he had one such break on each job on which he worked. There was evidence also that experienced oil-field workers knew such breaks were likely to occur, and that Hohmann was an experienced oil-field worker. We pass the thought that a break of equipment on every job of work might tend to indicate defendant habitually undertook to do work with equipment of insufficient strength for the work to be done, and point out that the evidence is that while such breaks sometimes occur, it is usually when the load is excessively heavy, or when it is being lifted. An experienced oil-field worker testified that he never heard of a chain breaking after a load had been lifted and hauled to the place where it was to be let down, especially if that were a light load such as this one of four pipes was regarded.

At the close of all the evidence defendant moved for judgment in his favor on the ground that plaintiff had offered no evidence of defendant's negligence sufficient to go to the jury, and that under the entire record judgment should be for defendant. This motion was overruled. There was no error in this ruling. Whether plaintiff's evidence established defendant's negligence, and whether defendant's evidence overcame the inference of negligence produced by plaintiff's evidence, were questions for the jury.

Appellant argues that the court erred in overruling his motion for

a new trial, and contends it should have been sustained because plaintiff had conducted herself becomingly and with decorum throughout the trial and had thus won the sympathy of the jury. This contention is novel, to say the least. Ordinarily it is misconduct of a litigant which is made the basis for a new trial. We have never heard it said, and find no authority to support the view, that proper and becoming conduct of a litigant is grounds for a new trial. Appellant also contends that the smallness of the verdict is a ground for a new trial. If there was any error in that respect the court corrected it by granting plaintiff's motion for a new trial limited to the amount of recovery.

Appellant complains of the ruling of the court sustaining plaintiff's limited motion for a new trial. The court is authorized to do that by statute (G. S. 1935, 60-3004), and similar rulings heretofore have been approved by this court. (*Carlgren v. Saindon,* 129 Kan. 475, 283 Pac. 620; *Van Pelt v. Richards Paint & Paper Co.,* 132 Kan. 581, 589, 296 Pac. 737; *Kiser v. Skelly Oil Co.,* 136 Kan. 812, 18 P. 2d 181; *Durkin v. Kansas City Public Service Co.,* 138 Kan. 558, 27 P. 2d 259.)

In this case it is at least tentatively conceded by appellant that if plaintiff is entitled to recover at all, the evidence would have supported a verdict for $10,000. There is no contention on behalf of appellant that he would have any other or additional evidence on a new trial of the other issues in the case, or that he would have any additional authorities to present, or any other or different argument to make to the trial court or to the jury. It would seem, therefore, that there was no necessity of trying the other issues. There are reasons why courts should be careful about granting new trials in actions for damages upon the sole issue of the amount of damages. This is particularly true if there has not been a full and free trial upon the other issues in the case, and where other evidence might be available, or other arguments adduced. But, where the question of defendant's liability has been fully tried out, and there is no contention that anything further could be offered to the court or jury, and the court is satisfied with the verdict of the jury on the other issues, but is not satisfied with the amount of the verdict—practically conceded in this case to be too small—the court does not abuse its discretion by granting a new trial upon the single issue of the amount of recovery.

We find no error in the record. The judgment of the court below is affirmed.