### John B. STEWART, Plaintiff,

### v.

### NATIONALEASE OF KANSAS CITY, INC., Defendant.

### Civil Action No. 94–1060–MLB.

United States District Court,
D. Kansas.

March 11, 1996.

Russell L. Mills, Wichita, KS, Eric J. Kidwell, Wichita, KS, for plaintiff.

George Greer Gsell, Woodard, Blaylock, Hernandez, Roth & Day, Wichita, KS, Timothy J. Finnerty, Kristin J. Blomquist, John V. Dwyer, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Wichita, KS, Natalie G. Haag, Kansas Gaming Commission, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

BELOT, District Judge.

Before the court are the following:

(1) Defendant's Motion for Summary Judgment (Doc. 57);

(2) Plaintiff's Response to Defendant's Motion for Summary Judgment (Docs. 59, 60);

(3) Defendant's Supplemental Motion for Summary Judgment (Doc. 66);

(4) Plaintiff's Response to Defendant's Supplemental Motion for Summary Judgment (Doc. 69);

(5) Plaintiff's Motion for Partial Summary Judgment (Doc. 65); and

(6) Defendant's Reply to Plaintiff's Motion for Partial Summary Judgment (Doc. 71).

## I. FACTUAL BACKGROUND

The following facts are undisputed by the parties, unless otherwise noted. Plaintiff was employed as a truck driver for A.M. Castle Metals & Co. ("A.M. Castle"), delivering steel to A.M. Castle customers (Doc. 57 at 6). On June 26, 1992, plaintiff was working on top of a semi-tractor trailer leased by A.M. Castle from Defendant NationaLease of Kansas City, Inc. ("NationaLease") (Doc. 57 at 4). Plaintiff stepped onto a rubber dock bumper pad attached to the end of the leased trailer, which twisted, causing him to fall to the ground and injure himself (Doc. 57 at 5).

The Vehicle Lease and Service Agreement ("lease") between NationaLease and A.M. Castle, entered into on May 12, 1983, governs the trailer in question (Doc. 57 at 5). The lease provides in relevant part:

4. **Maintenance and Repair.** Lessor shall maintain, repair, and service the Vehicles such that they remain in good operating condition and in compliance with the laws of the state or states in which the Vehicles are licensed to operate and with all applicable regulations or other requirements of the United States Department of Transportation or Interstate Commerce Commission. Lessor shall also perform regular preventative maintenance Inspec-

tions of the Vehicles in order to accomplish the foregoing.

. . . . .

**10. Servicing and Reporting.** A. Lessee shall deliver to the service facilities designated by the Lessor all the Vehicles needing repair or such Vehicles as may from time to time be requested by Lessor for adjustment and repair, provided, however, that Lessor may inspect, adjust, or repair any and all or said vehicles upon Lessee's premises or elsewhere at all reasonable times, and Lessee shall cooperate fully to facilitate such inspections, adjustments, and repairs. Lessee shall return each Vehicle for periodic inspection for a maximum of eight (8) hours in each and every calendar week for service, inspections, adjustments, and repairs to eliminate insofar as practicable interruption in Lessee's use. Lessee further agrees upon the occurrence thereof but no later than the time which each Vehicle is returned to Lessor's garage, a written report of any and all such faulty operation or other trouble that the driver may have had with the Vehicle.

(Doc. 57, Exh. F).

The attachment modifying the lease further provides:

4. *Service Agreement*—It is agreed that the Lessor is responsible for service, tires, and predictable repairs, but no other services and costs.... "Predictable repairs" are intended to include all labor, parts and supplies to repair lights and reflectors, wheel bearings, and replacement air valves, glad hands, air lines, tires tubes, brake linings, wheel seals, and preventative maintenance services. It is not intended to include washing, licensing, or state inspections, failures of axles, floor, bulkhead, pins, slider, suspension, frame or crossmembers; brake drums, landing gear, accident repair, repainting, repair or re-

placement of tarps, chains or binders, or include substitute vehicles.

(Doc. 57, Exh. F).[1]

Although NationaLease was headquartered in Kansas City, it arranged for a Wichita service company, Beeline, to be available for any on-site repairs needed in Wichita (Doc. 57 at 7). Neither the plaintiff nor any other person at A.M. Castle made any request of NationaLease or Beeline to repair the dock bumper pad on the trailer in question (Doc. 57 at 7; Doc. 65 at 13). Just over a month before plaintiff's injury, on May 19, 1992, NationaLease performed a preventative maintenance inspection on the trailer. It did not perform any maintenance on the dock bumper pad, but there is no evidence that the pad was in need of repair at the time. (Docs. 57 at 8; 65 at 14).

## II. SUMMARY JUDGMENT STANDARDS

■ Rule 56(c) of the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of the party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court must determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Entry of summary judgment is mandated, after an adequate time for discovery and upon motion, against a party who 'fails to make a showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Aldrich En-*

---

1. The lease also states at paragraph 37 that it shall be governed by the laws of Illinois. Plaintiff appears to raise this as an afterthought, stating that A.M. Castle is licensed "for hire" in Illinois (Doc. 65 at 3, 24). Plaintiff never ex-

plains why this is relevant, instead supporting his arguments concerning the lease with Kansas law. The court will address the arguments as presented under Kansas law, and will not do plaintiff's research for him.

ters., Inc. v. United States, 938 F.2d 1134, 1138 (10th Cir.1991) (quoting Celotex, 477 U.S. at 322, 106 S.Ct. at 2552). Summary judgment is inappropriate, however, if there is sufficient evidence on which a trier of fact could reasonably find for the nonmoving party. Prenalta Corp. v. Colorado Interstate Gas Co., 944 F.2d 677, 684 (10th Cir.1991).

■ The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact by informing the court of the basis for its motion. Celotex, 477 U.S. at 323, 106 S.Ct. at 2552. This burden, however, does not require the moving party to "support its motion with affidavits or other similar materials negating the opponent's claim." Id. (emphasis in original).

■ Once the moving party properly supports its motion, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. Anderson, 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id.; Devery Implement Co. v. J.I. Case Co., 944 F.2d 724, 726 (10th Cir.1991). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 793 (10th Cir.1988),

aff'd 939 F.2d 901 (10th Cir.1991). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Anderson, 477 U.S. at 256, 106 S.Ct. at 2514. Where the nonmoving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion. D.Kan. Rule 56.1. The court reviews the evidence in a light most favorable to the nonmoving party, see e.g., Washington v. Board of Public Utilities, 939 F.2d 901, 903 (10th Cir.1991), under the substantive law and the evidentiary burden applicable to the particular claim. Anderson, 477 U.S. at 255, 106 S.Ct. at 2514.

## III. DISCUSSION

Plaintiff, a citizen of the state of Kansas, filed this action on February 14, 1994 (Doc. 1).[2] Defendant is a Missouri corporation (Doc. 12). Thus, this court's jurisdiction is based upon diversity of citizenship under 28 U.S.C. § 1332. Plaintiff contends that NationaLease is liable for his injuries under several species of negligence: simple negligence, negligence per se, and res ipsa loquitur. Further, the plaintiff contends that NationaLease is liable under theories of breach of contract and breach of implied warranty. (Doc. 60 at 16–17). The court will summarize and address these theories of recovery in turn, beginning with those sounding in tort.[3]

---

**2.** Plaintiff filed his First Amended Complaint on April 18, 1995, alleging five theories of recovery (Doc. 61). Plaintiff filed his Second Amended Complaint on August 9, 1995, alleging the same five theories, but adding a damage claim on behalf of his wife for loss of consortium (Doc. 73). For simplicity, and because no new theories of recovery have been alleged since the filing of dispositive motions for summary judgment, the court will refer to plaintiff's second amended complaint as the "complaint".

**3.** The court feels compelled to note at the outset of this order that plaintiff's theories, simple when boiled down, are complicated by his disorganized, repetitive and impenetrably convoluted arguments. For example, responding to the defendant's understandable confusion about the nature of plaintiff's claims, plaintiff attempts to summarize his theories of recovery in an introductory paragraph:

The petition [sic] clearly sets out that the Defendant leased equipment to the Plaintiff's employer, and negligently breached that lease contract by failing to maintain the leased equipment as required by the contract. The failure of the Defendant to properly maintain the equipment is further a basis for the Plaintiff's claim for its negligent breach of the implied warranty to perform their maintenance agreement in a workmanlike manner and to use reasonable and appropriate care and skill. The Defendant's failure to negligently maintain the equipment it leased to the Plaintiff's employer in a safe condition pursuant to the terms of the contract, which required that the maintained vehicles, which would include the trailer, which is the subject of this action, in good operating condition, and in compliance with the law of the state or states in which the vehicles are licensed to operate and with all applicable regulations or other requirements of the United States Department of Transporta-

## A. Tort Theories

Plaintiff levels a scattershot of negligence theories at defendant, all based upon defendant's alleged failure to inspect and maintain the trailer in a safe condition.

In Count I of the complaint, plaintiff alleges that defendant leased the trailer to A.M. Castle in a defective condition and failed to maintain it in a safe condition, because the dock bumper pad at issue had only one of three bolts securing it at the time of his injury. The plaintiff contends that the defendant knew or could have known of this dangerous condition through the exercise of ordinary care. The plaintiff contends that these facts constitute a claim for ordinary negligence. (Doc. 73 at ¶¶ 8–12).

In Count II, plaintiff contends that NationaLease negligently failed to comply with K.S.A. 66–1, 129, 49 U.S.C.App. § 2501[4] and 49 C.F.R. § 396.3, which generally provide that vehicles, parts and accessories must be maintained by "motor carriers" in a safe condition at all times. Plaintiff contends that the failure to comply with these statutes constitutes negligence per se. (Doc. 73 at ¶¶ 17–21).

In Count IV, plaintiff contends that NationaLease represented it was in the business of leasing and maintaining motor vehicles, and thus, NationaLease impliedly warranted that maintenance would be performed in a workmanlike manner (Doc. 73 at ¶¶ 37–40). Plaintiff contends that NationaLease "negligently breached" this implied warranty by failing to properly maintain the trailer, and thus, NationaLease is liable for plaintiff's injuries resulting from that breach (Doc. 73 at ¶¶ 41–43).[5]

In Count V, plaintiff contends that NationaLease had exclusive control over the maintenance of the trailer, and that in the absence of defendant's negligence, plaintiff would not have been injured (Doc. 73 at ¶¶ 48–51). Thus, plaintiff contends that NationaLease should be held liable under the doctrine of *res ipsa loquitur.*

### 1. Negligence and Implied Warranty

 Although summary judgment is not favored in negligence cases, negligence is never presumed and plaintiff has a duty to offer proof concerning all elements of his claim. *See Sharples v. Roberts,* 249 Kan. 286, 292, 816 P.2d 390 (1991) (citing *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555). To

---

tion or Interstate Commerce Commission clearly sets out a cause of action pursuant to K.S.A. 66–1, 129, which would be a basis for a negligence per se contention. The Defendant in its motion for summary judgment appears to admit that the petition [sic] sets out a common law cause of action for negligence. The petition [sic] further clearly sets out that it is solely the Defendant's obligation under the contract to maintain the trailer that is the subject of this action and that the Defendant failed to do so. This the Plaintiff believes is sufficient to assert the legal doctrine of *res ipsa loquitur* (see Exhibit ——) against the Defendant.
(Doc. 60 at 17–18).

The remainder of plaintiff's response and his entire motion for partial summary judgment (Doc. 65) is little more than a repetition of the same mantra-like phrases quoted above in varying order, supported by cases, many of which have little or nothing to do with the issues at hand.

4. *Repealed by* Pub.L. 103–272, § 1(e), July 5, 1994, 108 Stat. 999. The statute was reenacted in substantially the same form at 49 U.S.C. § 31131(a). Plaintiff's accident occurred in June, 1992, while 49 U.S.C.App. § 2501 was still in effect.

5. The court addresses plaintiff's claim of implied warranty under the tort theory heading for several reasons. First, while the court recognizes that a suit for breach of an implied warranty may be premised upon both tort and contract theories, *Gilley v. Farmer,* 207 Kan. 536, 542, 485 P.2d 1284 (1971), as more fully discussed later, plaintiff has no standing to make a third-party beneficiary claim under the lease. Second, plaintiff is contending that a warranty of workmanlike performance is implied by law, which sounds in tort. *See Tamarac Development Company, Inc. v. Delamater, Freund & Assocs.,* 234 Kan. 618, Syl. ¶ 1, 675 P.2d 361 (1984) ("The difference between a tort and contract action is that a breach of contract is a failure of performance of a duty arising or imposed by agreement; whereas, a tort is a violation of a duty imposed by law."), and *Corral v. Rollins Protective Services Co.,* 240 Kan. 678, Syl. ¶ 6, 732 P.2d 1260 (1987) ("Implied warranties arise by operation of law and not by agreement of the parties"). Third, because breach of an implied warranty is tortious in nature and is shown by proof of negligence, *Zenda Grain & Supply Co. v. Farmland Industries,* 20 Kan.App.2d 728, 739, 894 P.2d 881 (1995), it simplifies the discussion to address plaintiff's implied warranty theory along with his other theories of negligence.

recover for negligence under Kansas law, plaintiff must prove the existence of a duty, breach of that duty, injury, and causation between the duty breached and the injury suffered. *McGee By and Through McGee v. Chalfant*, 248 Kan. 434, 437, 806 P.2d 980 (1991); *see also McDermott v. Midland Management, Inc.*, 997 F.2d 768, 770 (10th Cir.1993).

### a. *Duty of Reasonable Care*

 The threshold question in any negligence action is whether the defendant owed a duty of care to the plaintiff. If no duty is owed, there can be no negligence. *Cansler v. State*, 234 Kan. 554, 558, 675 P.2d 57 (1984) (quoting *Hanna v. Huer, Johns, Neel, Rivers & Webb*, 233 Kan. 206, 662 P.2d 243 (1983)). Whether a duty exists is a question of law for the court, while whether that duty has been breached is a question of fact for the jury. *Schrader v. Great Plains Electric Co-op, Inc.*, 19 Kan.App.2d 276, 278, 868 P.2d 536 (1994) (citing *Durflinger v. Artiles*, 234 Kan. 484, 488, 673 P.2d 86 (1983)). Plaintiff assumes, without citation of convincing authority, that the lessor of a commercial vehicle has a duty that extends to the lessee's employee (Doc. 59 at 19–34). The court has researched the issue, however, and finds that such a duty does exist under the common law.

There are very few Kansas cases on the subject, and most are relatively old. *See, e.g., Tannahill v. Oil & Gas Co.*, 110 Kan. 254, 259, 203 P. 909 (1922) (imposing liability on the owner of an automobile who knowingly permits it to be used when it is in such a dangerous defective condition that it cannot be effectively controlled and swerves from side to side); *Nelson v. Healey*, 151 Kan. 512, 513–14, 99 P.2d 795 (1940) (defendant car dealer who expressly represented to plaintiff that his used cars were safe held

liable for plaintiff's injuries resulting from tire blow out on a loaned auto).

More helpful is a line of Kansas decisions addressing liability in the context of bailments.[6] In *Hohmann v. Jones*, 146 Kan. 578, 72 P.2d 971 (1937), defendant regularly leased a truck and driver to plaintiff's employer, an oil drilling company. The truck was equipped with a winch and chain for moving and stacking pipe casings. *Hohmann*, 146 Kan. at 578–79, 72 P.2d 971. Plaintiff was killed when the chain securing the pipes broke, causing them to fall and crush him. *Id.* at 579, 72 P.2d 971. His wife brought an action against the truck lessor for negligence in equipping and operating the truck with a chain of insufficient strength. *Id.* Reviewing the sufficiency of the evidence, the court found that the lessor owed a duty to plaintiff:

> It seems clear that defendant owed to the deceased the duty of due care with respect to the truck, with its equipment and driver, which he furnished. The applicable rule is well stated by the American Law Institute, section 408, Restatement of Torts, as follows:
>
> "One who leases a chattel as safe for immediate use is subject to liability to those whom he should expect to use the chattel, or to be in the vicinity of its probable use, for bodily harm caused by its use, in a manner for which, and by a person for whose use, it is leased, if the lessor fails to exercise reasonable care to make it safe for such use or to disclose its actual condition to those who may be expected to use it."

*Hohmann*, 146 Kan. at 581, 72 P.2d 971.

Courts in other jurisdictions have widely recognized this duty of ordinary care on the part of a bailor. *See Blankenship v. St. Joseph Fuel Oil & Mfg. Co.*, 360 Mo. 1171, 232 S.W.2d 954, 958 (1950) ("[B]ailor who

---

**6.** While neither party has used bailment terminology in its briefs, it is clear that the lease at issue here created a bailment for mutual benefit. *See Global Tank Trailer Sales v. Textilana–Nease, Inc.*, 209 Kan. 314, 317, 496 P.2d 1292 (1972) ("A bailment for mutual benefit arises whenever it appears that both of the parties receive a benefit from the transaction. It is not essential, to constitute a bailment for mutual benefit, that

the bailee actually receive compensation in money or tangible property, so long as the bailment is an incident of the business in which the bailee makes a profit, or was accepted because of benefits expected to accrue." (citation omitted)). Thus, the court will sometimes refer to lessor NationaLease as the "bailor", and lessee A.M. Castle as the "bailee".

negligently fails to furnish a chattel reasonably fit and proper for the use intended may be answerable in tort to a third person in instances wherein his own negligence proximately contributes to the damage"); *Scharf v. Gardner Cartage Co.*, 95 Ohio App. 153, 113 N.E.2d 717, 723 (1953) (bailor of construction equipment had duty imposed by law aside from contract "of exercising ordinary care to see that the equipment supplied is reasonably safe and suitable for use in the type of work for which it is supplied"; duty extended to bailee's employee); *see also*, 7A AmJur2d, Automobiles and Highway Traffic, § 742 (1980) (Bailor or lessor for mutual benefit "has the duty to exercise reasonable care to see that the vehicle is reasonably safe for use. . . . The liability of the bailor for breach of this duty extends not only to the bailee, or to one such as his employee, standing in his position, but to third persons as well."); 46 A.L.R.2d 404, § 13 ("[T]he bailor, knowing that an automotive vehicle or machine is being hired for the purpose of being used upon the public highways, has the duty of inspecting such vehicle or machine to discover defects in the bailed machine. Such duty, it has often been observed, does not arise solely out of the contract of bailment, but is a general duty imposed by law upon the bailor to refrain from putting upon the highway an instrumentality which might reasonably be expected to cause harm not only to the bailee, but to third persons lawfully using the highway.")

Thus, the court finds that defendant owed a general duty of reasonable care to plaintiff as a foreseeable user of the trailer.

b. *Duty of Workmanlike Performance*

 Plaintiff contends that defendant also impliedly warranted that its inspection and maintenance of the trailer would be performed in a workmanlike manner (Doc. 73 at ¶¶ 37–40). Plaintiff cites a number of fact-specific cases in support, few of which actually support his claim.[7]

In *Corral v. Rollins Protective Services Co.*, 240 Kan. 678, 732 P.2d 1260 (1987), the Kansas Supreme Court discussed Kansas cases recognizing implied warranties outside the context of a sales transaction:

> In Kansas it is recognized that a person who contracts to perform work or to render service, without an express warranty, impliedly warrants to perform the task in a workmanlike manner and to exercise reasonable care in doing the work.

*Corral*, 240 Kan. at 688, 732 P.2d 1260 (citations omitted).

The court specifically addressed the duty of a bailor in a bailment for the mutual benefit of the parties:

> An implied warranty of fitness has been recognized in connection with bailments made for the mutual benefit of both the bailor and the bailee, *such as a let-for-hire agreement*, then a higher duty arises on the part of the bailor, the general rule being that, while the bailor is not an absolute insurer against injuries from a defective chattel, he is charged with the duty of inspection to determine whether or not the chattel is fit for the purpose intended. Thus, if the defect were discoverable, he became liable for injuries to the bailee, arising from this unsafe condition, under the theory of an implied warranty of fitness.

*Corral*, 240 Kan. at 689, 732 P.2d 1260 (emphasis added) (quoting *Global Tank Trailer*

---

7. Plaintiff repeatedly cites *Vrooman v. Beech Aircraft Corp.*, 183 F.2d 479 (10th Cir.1950) in support of his contention that an implied warranty extends to third parties such as himself. This reliance is misplaced. *Vrooman* involved an airplane that was returned to defendant manufacturer for repairs; defendant purported to repair it; and the plane crashed shortly thereafter while the non-owner plaintiff was flying it. *Vrooman*, 183 F.2d at 480. The existence of the manufacturer/repairman's duty in *Vrooman* turned upon the court's characterization of the airplane as "a thing of danger". *Id.; see also* 57A AmJur2d, Negligence § 123 (1989) ("[N]o privity of contract is essential to support liability for negligence in respect of acts or instrumentalities which are imminently dangerous."); 7A AmJur2d, Automobiles and Highway Traffic § 736 ("The exception to the privity doctrine in favor of 'inherently' dangerous products, that is, products dangerous by their nature, has been held not to extend to motor vehicles and their accessories and supplies."). Moreover, plaintiff's assertion that he was the " 'pilot' of a tractor/trailer combination weighing thousands of pounds capable of doing immense damage if it were not properly maintained" (Doc. 60 at 25), has nothing to do with his falling off the bumper of a trailer.

*Sales v. Textilana–Nease, Inc.,* 209 Kan. 314, 320, 496 P.2d 1292 (1972)); *see also Zenda Grain & Supply Co. v. Farmland Industries, Inc.,* 20 Kan.App.2d 728, 739, 894 P.2d 881 (1995) (noting that Kansas cases have been liberal in finding an implied warranty of workmanlike performance in various agreements calling for performance of work). The *Corral* court also cited *Hohmann, supra,* for the proposition that implied warranties exist in lease transactions.

While *Corral* and *Global Tank* address disputes between actual parties to a bailment, *Hohmann* involved injury to an employee of the bailee, a non-party to the contract. *Hohmann,* 146 Kan. at 578–79. Given the Kansas Supreme Court's relatively recent citation to *Hohmann* in its discussion of implied warranties, this court believes that, at least in a bailment or lease context, the Kansas courts would extend this implied warranty to an employee of the bailee in plaintiff's position. *See also, Shehi v. Southwest Rentals, Inc.,* 199 Kan. 265, 270, 428 P.2d 838 (1967) (implicitly recognizing bailor's duty to exercise due care to furnish chattels reasonably fit for known use where plaintiff was not a party to the lease).

This duty of workmanlike performance has been widely recognized in other jurisdictions, and extended to non-parties to the contract. *See e.g., Hudson v. Moonier,* 102 F.2d 96, 99 (8th Cir.) (holding that where party undertook to keep truck in state of repair, he owed "to the contractor and his employees the duty of care in respect to such matters over which he retains control, or undertakes to perform."), *cert. denied,* 307 U.S. 639, 59 S.Ct. 1037, 83 L.Ed. 1520 (1939); *Evans v. Goldfine Truck Rental Service Co.,* 241 Pa.Super. 329, 361 A.2d 643, 647 (1976) (Truck lessor's contract to maintain truck in "good repair" created a "duty to protect third persons ... from injury resulting from

defective or dangerous conditions discoverable by reasonable inspection."); *see also,* 46 A.L.R.2d 404, § 5 ("[T]he question of privity of contract has no bearing upon the question of the ultimate responsibility of the bailor. The bailor's responsibility ... is imposed not only by the contract of bailment, but also by the duty of care owed by the bailor under the circumstances of the bailment.")

### c. *K.S.A. § 84–2a–216*

Plaintiff argues that K.S.A. § 84–2a–216 is determinative of the issue of whether the implied warranty extends to non-parties to a lease (Doc. 69 at 2). Article 2a of the Uniform Commercial Code "applies to any transaction, regardless of form, that creates a lease." K.S.A. § 84–2a–102. K.S.A. § 84–2a–216 provides in relevant part:

> **Third-party beneficiaries of express and implied warranties.** A warranty to or for the benefit of a lessee under this article, whether express or implied, extends to any person who may reasonably be expected to use, consume, or be affected by the goods and who is injured by breach of the warranty.

K.S.A. § 84–2a–216.

 While the court does not agree that the statute is determinative,[8] it does believe that the statute represents further support for the extension of an implied warranty to foreseeable plaintiffs not parties to a lease.

Defendant, on the other hand, emphasizes language in *Crabb v. Swindler,* 184 Kan. 501, 337 P.2d 986 (1959), which states:

> [W]hen a party binds himself by contract to do a work or perform a service, *in the absence of express agreement,* there is an implied agreement or warranty, which the law annexes to the contract, that he will do a workmanlike job and will use reasonable

---

**8.** The court cannot determine whether plaintiff is contending that Article 2a actually applies to the lease in question, or whether he is arguing that it applies by analogy. In any event, plaintiff offers no support for its application.

The court has been unable to locate any Kansas cases discussing Article 2a, but notes that the effective date of the statute is February 1, 1992, while the lease at issue was entered into in May, 1983 (Doc. 57 at 5). The court also notes that

"the general rule of statutory construction is that a statute will operate prospectively unless *its* language clearly indicates the legislature intended that it operate retrospectively." *Chiles v. State,* 254 Kan. 888, 896, 869 P.2d 707, *cert. denied,* —— U.S. ——, 115 S.Ct. 149, 130 L.Ed.2d 88 (1994). There is no such indication here. Thus, the court declines to apply Article 2a to the lease.

and appropriate care and skill. (emphasis added).

*Crabb*, 184 Kan. at 505, 337 P.2d 986. Defendant argues that here, there was an express written agreement between A.M. Castle and defendant (Doc. 66 at 11–12). Defendant's argument proves too much, however, because in many of the cases implying a warranty of workmanlike performance, there was also an express written agreement between the parties. *See Corral*, 240 Kan. at 681–82, 732 P.2d 1260 (burglar alarm installation and service contract); *Tamarac*, 234 Kan. at 618, 675 P.2d 361 (architectural and engineering service contract); *Gilley*, 207 Kan. at 538, 485 P.2d 1284 (insurance contract); *Zenda Grain*, 20 Kan.App.2d at 732, 894 P.2d 881 (management contract) In other words, express agreements and implied warranties are not mutually exclusive. *See Corral*, 240 Kan. 678, Syl. ¶ 6, 732 P.2d 1260 ("Express warranties are those for which a party bargained; ... and are contractual, having been created during the bargaining process. Implied warranties arise by operation of law and not by agreement of the parties, their purpose being to protect a party from loss *where the subject matter of the contract, though not violating an express promise,* fails to conform to the normal commercial standard or meet the party's known particular purpose." (emphasis added)).

The court finds that defendant owed plaintiff a duty of workmanlike performance in the inspection and repair of the trailer, *i.e.,* that the service must be performed skillfully, carefully, diligently and in a workmanlike manner. *See Zenda Grain*, 20 Kan.App.2d at 739–40, 894 P.2d 881.

#### d. *Breach of Duty*

Whether a duty has been breached is a question of fact for the jury. *Schrader*, 19 Kan.App.2d at 278, 868 P.2d 536. The court feels compelled to warn plaintiff that he is perilously close to losing on this issue as a matter of law. Given the court's finding that defendant owed plaintiff a reasonable duty of ordinary care in providing the trailer, and a duty of workmanlike performance in inspecting and repairing the trailer, plaintiff is safe from summary judgment at present, but

faces a difficult task in proving that there was a breach of either of these duties.

Proving breach of the duty of ordinary care will require proof that defendant provided a trailer with a dangerous bumper. In other words, if the bumper at issue was damaged while in the care of plaintiff's employer, and thus was not discoverable by defendant in the exercise of reasonable care, it will be difficult, if not impossible, for plaintiff to prove breach. *See Evans v. Goldfine Truck Rental Service Co.,* 241 Pa.Super. 329, 361 A.2d 643, 647 (1976) (to show breach, plaintiff must show not only that there was a defective condition, but that it was discoverable by reasonable inspection); *see also* 46 A.L.R.2d 404, § 8 ("[B]ailor cannot ordinarily be held responsible for defects of which, by the exercise of the duty of care owed, he cannot be aware, and where the chattel is in the possession of the bailee it is manifest that, unless informed, the bailor cannot know of the defective condition.")

Similarly, proving breach of the implied warranty will be especially difficult unless plaintiff can prove that defendant was given notice that it needed to repair the trailer. *See, e.g., Hudson v. Moonier,* 102 F.2d 96, 98–99 (8th Cir.1939) (defendant could be found liable where it had notice of defect prior to accident and sufficient time to repair it, but failed to do so); *Griffith v. Clearfield Truck Rentals, Inc.,* 427 Pa. 30, 233 A.2d 896, 898 (1967) (defendant liable where plaintiff made repeated repair inquiries to defendant before accident); *Campbell v. Siever,* 253 Minn. 257, 91 N.W.2d 474, 476 (1958) (same); *cf. Johnson v. Ryder Truck Rentals, Inc.,* 686 F.Supp. 727, 729–30 (W.D.Ark.1988) (plaintiff truck driver who slipped and fell in oil slick failed to state a sufficient claim of negligence against truck lessor for failing to repair oil leak, where plaintiff gave notice to lessor of leak but lessor was unable to repair because it lacked the necessary parts).

Given plaintiff's admission that neither he nor his employer requested any repairs to the bumper (Doc. 65 at 13), plaintiff faces an uphill battle. Plaintiff is warned that the court will not allow him to transform the implied warranty into an absolute duty, *i.e.,* plaintiff will not be allowed to foist upon

defendant a duty to have an omniscient mechanic on board the trailer at all times.

Moreover, plaintiff's contention that any negligence on his part (Doc. 65 at 34–35) or his employer's part (Doc. 65 at 28–31) may not be compared with negligence on defendant's part is unsupported by law. There is nothing that the court is aware of which would foreclose defendant from arguing that plaintiff and/or A.M. Castle had a duty of some sort, and from proving that the duty was breached.

## 2. Negligence Per Se

In Count II of the complaint, plaintiff contends that NationaLease negligently failed to comply with K.S.A. 66–1, 129, 49 U.S.C.App. § 2501, and 49 C.F.R. § 396.3, which generally provide that vehicles, parts and accessories must be maintained in a safe condition at all times. Plaintiff contends that the failure to comply with these statutes constituted negligence per se. (Doc. 73 at ¶¶ 17–21).[9]

The distinction between "negligence" and "negligence per se" is the means and method of ascertainment, in that the former must be found by a factfinder from the evidence, while the latter results from violation of the specific requirement of law or ordinance; and the only fact for the determination of the factfinder is the commission or omission of the specific act inhibited or required.

*Watkins v. Hartsock,* 245 Kan. 756, 761, 783 P.2d 1293 (1989).

 To recover under a negligence per se theory in Kansas, plaintiff must establish that defendant (1) violated a statute, ordinance or regulation, and (2) that the violation caused the plaintiff's damages. *See Plains Transport of Kansas, Inc. v. King,* 224 Kan. 17, 25, 578 P.2d 1095 (1978); *Noland v. Sears, Roebuck & Co.,* 207 Kan. 72, 74–75, 483 P.2d 1029 (1971). Further, plaintiff must "establish that an individual right of

action for injury arising out of the violation was intended by the legislative body that passed the ordinance." *Kerns v. G.A.C. Inc.,* 255 Kan. 264, 281, 875 P.2d 949 (1994). Ordinances enacted to protect the public in general do not create a duty to individuals injured as a result of a violation of the ordinances. *Id.*

### a. *Federal Statutes and Regulations*

 Plaintiff bases his claim of negligence per se in part upon defendant's alleged violation of 49 U.S.C.App. § 2501 and 49 C.F.R. § 396.3, provisions of the Motor Carrier Safety Act. 49 U.S.C.App. § 2501 provided:

> The purposes of this chapter are to promote the safe operation of commercial motor vehicles, to minimize dangers to the health of operators of commercial vehicles and other employees whose employment directly affects motor carrier safety, and to assure increased compliance with traffic laws and with the commercial motor vehicles safety and health rules, regulations, standards and orders issued pursuant to this Act.

49 U.S.C.App. § 2501.

49 C.F.R. § 396.3 provides:

> (a) *General.* Every motor carrier shall systematically inspect, repair, and maintain, or cause to be systematically inspected, repaired, and maintained, all motor vehicles subject to its control.
>
> (1) Parts and accessories shall be in safe and proper operating condition at all times. These include those specified in part 393 of this subchapter and any additional parts and accessories which may affect safety of operation, including but not limited to, frame and frame assemblies, suspension

---

9. Actually, plaintiff contends that he was a third-party beneficiary of the lease between A.M. Castle and NationaLease, because NationaLease knew that the plaintiff or others would be drivers and that proper maintenance of the trailers would directly benefit them (Doc. 73 at ¶¶ 16–17, 27–28). As already noted, NationaLease agreed in the lease to maintain the trucks in compliance with federal and state law.

The court will ignore these contentions in its discussion of negligence per se, first, because they are unnecessary, given that the federal and state laws apply regardless of the what the lease states, and second, because they confuse the tort and contract claims. Moreover, as the court will discuss in subsection B., *infra,* plaintiff's third-party beneficiary theory is completely without merit.

systems, axles and attaching parts, wheels and rims, and steering systems.

49 C.F.R. § 396.3.

While the court is inclined to agree with defendant and its supporting authority that as a lessor, it is not a "motor carrier" under the Act (Doc. 66 at 27–29), it will not rule on this issue, because the plaintiff fails as a matter of law for a myriad of other simple reasons. First, plaintiff has failed to satisfy this court that the dock bumper pads in question are "bumpers" in the sense contemplated by the regulations. Plaintiff cites 49 C.F.R. § 393.86, entitled "Rear End Protection", and does not explain how it applies to his case (Doc. 65 at 1, 18). The section provides:

(e) The bumpers or devices shall be substantially constructed and firmly attached. Motor vehicles constructed and maintained so that the body, chassis, or other parts of the vehicle afford the rear end protection contemplated shall be deemed to be in compliance with this section.

49 C.F.R. § 393.86(e). The court finds that this section contemplates a "bumper" necessary for minimizing injury in a collision, not a bumper pad used for preventing cosmetic damage to a trailer when backing up to a loading dock (Doc. 57, Exh. B, (Depo. of Plaintiff Stewart at 110); Doc. 57, Exh. C, (Depo. of Dennis McCart at 32)).

Further, the court finds that plaintiff has failed to demonstrate that the dock bumper pads were "accessories which may affect safety of operation". 49 C.F.R. § 396.3(a)(1). Plaintiff attempts to claim for purposes of his cause of action that the bumper pads affect the "safe and proper operating condition", 49 C.F.R. § 396.3(a)(1), of the trailer. Plaintiff, as driver of the vehicle, had the statutory duty before every trip to inspect the vehicle and determine that it was "in safe operating condition". *See* 49 C.F.R. 396.13(a). As de-

fendant points out, surely "safe operating condition" means the same thing when used in various portions of the Motor Carrier Safety Act (Doc. 71 at 21). Yet, when plaintiff was asked in his deposition whether he inspected the dock pads on the day of his accident, he replied in the negative. When asked to explain why he did not inspect the dock pad, plaintiff replied:

A. Because it doesn't have anything to do with the requirements of the DOT federal laws. The equipment running around on the nation's highways, half of them might have dock pads, half of them might not. It's not a requirement.

Q. So it's your testimony dock pads are not safety equipment.

A. Doesn't have anything to do with safety of the vehicle.

(Doc. 57, Exh. B, (Depo. of Plaintiff Stewart at 110).

Plaintiff cannot have his cake and eat it too. The court finds that defendant is entitled to summary judgment on plaintiff's claim of negligence per se for alleged violations of provisions of the Motor Carrier Safety Act.

b. *Kansas Statutes and Regulations*

Plaintiff also bases his claim of negligence per se upon defendant's alleged violation of K.S.A. § 66–1, 129, a provision of the Kansas Motor Carrier Act (Doc. 60 at 20–22).[10] K.S.A. § 66–1,129 provides that no motor carrier shall operate any motor vehicle on a highway in Kansas except within the provisions of the rules and regulations adopted by the Kansas corporation commission. Kansas Administrative Regulation 82–4–3 adopts and incorporates several of the federal provisions already discussed, including 49 C.F.R. Part 393, pertaining to parts and accessories necessary for safe operation, and 49 C.F.R. Part 396, pertaining to inspection, repair and maintenance. K.A.R. 82–4–3(a)(4), (7).

---

**10.** Plaintiff further claims that he entitled to treble damages for defendant's violation of K.S.A. § 66–1, 129 pursuant to K.S.A. § 66–176. The court will not rule upon the substantive merits of this contention, because it finds that the statute of limitations has run on any claim under K.S.A. § 66–176. *See Rothwell v. Werner Enterprises, Inc.*, 859 F.Supp. 470, 478–79 (D.Kan.1994) (finding that one-year statute of limitations,

K.S.A. § 60–514(c), applies to claims brought under K.S.A. § 66–176); *see also Grindsted Products, Inc. v. Kansas City Power & Light Co.*, 21 Kan.App.2d 435, 442, 901 P.2d 20 (1995) (approving *Rothwell* ).

Plaintiff was injured on June 26, 1992, but did not file suit until February 14, 1994 (Doc. 1). Thus, any claims under K.S.A. § 66–176 are time-barred.

The court incorporates its discussion of the federal statutes and regulations above, and to the extent that plaintiff's claims under the Kansas Motor Carrier Act are derivatively premised upon violations of those federal sections, finds that defendant is entitled to summary judgment.

K.S.A. § 66–1, 129 also provides that "every vehicle unit shall be maintained in a safe and sanitary condition at all times." K.S.A. § 66–1, 129(a)(1). Again, for the same reasons discussed regarding the federal regulations, plaintiff has failed as a matter of law to demonstrate that dock bumpers have anything to do with the safe condition of the vehicle. The court finds that the statute has not been violated and that defendant is entitled to summary judgment for alleged violations of the Kansas Motor Carrier Act.

### 3. Res Ipsa Loquitur

Plaintiff also contends that NationaLease had exclusive control over the maintenance of the trailer, and that in the absence of defendant's negligence, plaintiff would not have been injured (Doc. 73 at ¶¶ 48–51). Thus, plaintiff contends that NationaLease should be held liable under the doctrine of *res ipsa loquitur*.[11] This claim is utterly without merit.

■ The doctrine of *res ipsa loquitur* is a rule of evidence rather than substantive law. *Bias v. Montgomery Elevator Co.*, 216 Kan. 341, 343, 532 P.2d 1053 (1975) (citation omitted). For the doctrine to apply: (1) It must be shown that the thing or instrumentality causing the injury or damage was within the exclusive control of the defendant; (2) the occurrence must be of such kind or nature as ordinarily does not occur in the absence of someone's negligence; and (3) the occurrence must not have been due to contributory negligence of the plaintiff. *Id.* (citations omitted).

■ Here, plaintiff fails the first prong of the test. It is undisputed that the trailer in question was in the exclusive control of the plaintiff or his employer at the time of the injury, and that the last time that the defen-

dant had possession of the vehicle was over a month prior to the accident. (Doc. 66, Exh. A). The court finds as a matter of law that the doctrine of *res ipsa loquitur* does not apply to the fact of this case.

### B. *Third Party Beneficiary Theory*

In Count III of the complaint, plaintiff contends that he was a third party beneficiary of the lease contract between A.M. Castle and NationaLease, because NationaLease knew that the plaintiff or others would be drivers and that proper maintenance of the trailers would directly benefit those drivers (Doc. 73 at ¶¶ 25–28). Plaintiff contends that NationaLease negligently failed to maintain the trailer at issue, thereby breaching the lease contract (Doc. 73 at ¶¶ 29–30). Thus, plaintiff contends that as a third party beneficiary, he is entitled to damages for this breach (Doc. 73 at ¶¶ 31–34). This claim is also without merit.

A very basic tenet of contract law is that: [o]rdinarily, the obligations arising out of a contract are due only to those with whom it is made; a contract cannot be enforced by a person who is not a party to it or in privity with it, except ... under certain circumstances by a third-party beneficiary.

17A Am.Jur.2d, Contracts § 425 (1991).

■ Plaintiff makes no claim that he was a party to the lease or in privity with it, and thus must stand or fall on his claim that he was a third party beneficiary. It has long been established that a contract must be intended for the benefit of a third person in order to entitle him to enforce it, *i.e.*, it must be a purpose or object of the parties to the contract to benefit the third party. *Burton v. Larkin*, 36 Kan. 246, Syl. ¶ 3, 13 P. 398 (1887).

In the more recent case of *First National Bancshares of Beloit, Inc. v. Geisel*, 853 F.Supp. 1337 (D.Kan.1994), Judge Saffels of this court summarized the body of Kansas law regarding third party beneficiaries:

Recent Kansas caselaw analyzing the law of third-party contract beneficiaries

**11.** As with his negligence *per se* claim, plaintiff attempts to rely on a third-party beneficiary theory in this count. This reliance is unnecessary, and, as the court will discuss in subsection B., *infra*, is without merit.

divides them into the general classes of intended beneficiaries and incidental beneficiaries. *Noller v. GMC Truck and Coach Div.*, 244 Kan. 612, 772 P.2d 271, 275 (1989) (citing *Fasse v. Lower Heating and Air Conditioning, Inc.*, 241 Kan. 387, 736 P.2d 930 (1987)). A beneficiary may sue to enforce a contract made by others only if he is an intended beneficiary, *i.e.*, one who the contracting parties intended should receive a direct benefit from the contract. *Id.*, 772 P.2d at 275; *Martin v. Edwards*, 219 Kan. 466, 548 P.2d 779, 785 (1976).

The determination of the contracting parties' intent as to the rights of a third party beneficiary is a question of contract construction for the court, and the general rules of contract construction apply. *Id.* The meaning of the contract and the intent of the parties are to be deduced by the court from the instrument itself, as long as its terms are plain and unambiguous. *Cornwell v. Jespersen*, 238 Kan. 110, 708 P.2d 515, 521 (1985); *Martin v. Edwards*, 548 P.2d at 785–86....

Contracting parties are presumed to act for themselves. *Id.* at 785; *Ronnau v. Caravan Intern. Corp.*, 205 Kan. 154, 468 P.2d 118, 122 (1970). Therefore the parties' intent to benefit a third person must be clearly expressed in the contract. *Id.*; *see Fasse v. Lower Heating and Air Conditioning*, 736 P.2d at 932; *Martin v. Edwards*, 548 P.2d at 785; *see also United States v. United Services Automobile Ass'n*, 968 F.2d 1000, 1001–02 (10th Cir. 1992) (applying Kansas law). It is not necessary, however, for the third party to be the exclusive beneficiary of the contract; it may benefit the contracting parties as well. *Fasse*, 736 P.2d at 932; *Martin*, 548 P.2d at 785. Nor is it necessary for the third party beneficiary to be personally named in the contract, if he is a member of a designated class or otherwise identifiable as a person intended by the parties' language to benefit from the con-

tract. *Hartford Fire Ins. Co. v. Western Fire Ins. Co.*, 226 Kan. 197, 597 P.2d 622, 632 (1979). However, the third party must show the existence of a provision in the contract that operates to his benefit. *Id.*; *see United States Automobile Ass'n*, 968 F.2d at 1002.

*First Nat. Bancshares*, 853 F.Supp. at 1340–41.

■ Here, both parties agree that the lease entered into between A.M. Castle and NationaLease is clear and unambiguous (Doc. 65 at 19–20; Doc. 66 at 44). The court finds that the terms of the contract do not suggest that these parties intended to directly benefit plaintiff. This is a simple contract between a company that leases trucks and a company that uses those trucks to transport goods. Mere foreseeability that plaintiff would be driving these trucks does not evidence an intent by the parties to bestow a benefit upon him. At best, plaintiff is an incidental beneficiary of the lease, and this status does not entitle him to bring suit on the contract. *See Hudson v. Moonier*, 102 F.2d 96, 98 (8th Cir.1939) (holding that third party truck driver had no right to maintain an action for injuries resulting from a breach of contract between two contracting parties); *Johnson v. Ryder Truck Rentals, Inc.*, 686 F.Supp. 727, 728–29 (W.D.Ark.1988) (holding that employee truck driver was not a third party beneficiary of the lease between his employer and the truck lessor); *Garner v. Todd*, 361 N.W.2d 459, 461 (Minn.Ct.App. 1985) (same).[12] The court finds that defendant is entitled to summary judgment on plaintiff's breach of contract claim.

### C. *Non–Economic Damages*

Defendant also requests the court to enter a ruling as a matter of law that plaintiff's claims for non-economic damages and loss of consortium having any non-economic elements are subject to the damages cap of K.S.A. § 60–19a02 (Doc. 57 at 19, 25). The court believes that this issue is premature,

---

**12.** Even if plaintiff was able to establish that he was entitled to bring suit on the contract, the court would still grant summary judgment on the issue of breach. The facts show that each time A.M. Castle or one of its drivers requested service, NationaLease provided that service in a satisfactory manner. *See Wight v. Agristor Leasing*, 652 F.Supp. 1000, 1018 (D.Kan.1987) (granting summary judgment on breach of contract claim against lessor where each time lessees requested service, the work requested was performed satisfactorily).

and thus declines to rule on it at this time. The court is inclined to allow the plaintiff to present the claims to the jury and take up the "cap" issue if the jury returns a verdict which would make consideration of the issue necessary. *See Patton v. TIC United Corp.*, 77 F.3d 1235 (10th Cir.1996) (finding that one of the purposes of K.S.A. § 60–19a02 is "to protect litigants from the unrestrained exercise of judicial discretion to limit damage awards" (citation omitted)). This issue can be revisited at the pretrial conference.

### D. *Plaintiff's Motion for Partial Summary Judgment*

■ Plaintiff filed a motion for partial summary judgment (Doc. 65) and defendant responded (Doc. 71). The same standards discussed in section II., *supra*, apply to plaintiff's motion. When both parties file cross motions for summary judgment, the court must consider each motion separately and apply controverted facts in a light most favorable to the nonmovant. *Chaparro v. IBP, Inc.*, 873 F.Supp. 1465, 1471 (D.Kan.1995); *Federated Mut. Ins. Co. v. Botkin Grain Co.*, 856 F.Supp. 607, 615 (D.Kan.1994).

The court has done so. As mentioned, plaintiff's motion is a rehash of his arguments in response to defendant's motion for summary judgment (Doc. 60). In light of the previous discussion, the court finds that genuine issues of material fact exist, and accordingly, plaintiff's motion for partial summary judgment is denied.

### IV. CONCLUSION

For the foregoing reasons, defendant's motion (Doc. 57) and supplementary motion for summary judgment (Doc. 66) as to plaintiff's causes of action for negligence (Doc. 73, Count I) and breach of implied warranty (Doc 73, Count IV) are denied. Defendant's motions as to plaintiff's claims for negligence per se (Doc. 73, Count II), *res ipsa loquitur* (Doc. 73, Count V), and breach of contract (Doc. 73, Count III) are granted. Plaintiff's motion for partial summary judgment (Doc. 65) is denied in full.

A motion or motions for reconsideration of this order shall comply with the provisions of this court's Rule 7.3 and *Comeau v. Rupp,*

810 F.Supp. 1172, 1174 (D.Kan.1992). The motion shall be limited to 8 pages in 10 cpi type for both main and footnote text. Only footnotes may be single-spaced. A response shall be limited to 4 pages. No reply shall be filed.

IT IS SO ORDERED.