(868 P.2d 536)
No. 69,352

DARRELL SCHRADER and JUDY SCHRADER, *Appellees* v. GREAT PLAINS ELECTRIC COOPERATIVE, INC., and MIDWEST ENERGY, INC., *Appellants*.

Petition for review denied 255 Kan. 1003 (1994).

Opinion filed February 11, 1994.

*H. David Starkey*, of Lowe, Starkey & Gatz, of Colby, for appellant Great Plains Electric Cooperative, Inc.

*Brock R. McPherson* and *Boyd R. McPherson*, of McPherson Law Offices, Chtd., of Great Bend, for appellant Midwest Energy, Inc.

*Harry M. Bleeker* and *James M. McVay*, of Watkins, Calcara, Rondeau & Friedeman, Chtd., of Great Bend, for appellees.

Before ELLIOTT, P.J., PIERRON and ROYSE, JJ.

ROYSE, J.: This wrongful death action arises out of an automobile accident that killed Michelle Schrader, the daughter of Darrell and Judy Schrader. The Schraders sued Great Plains Electric Cooperative, Inc., (Great Plains) alleging the utility was negligent in the placement of its guy wire and anchor. Later, Midwest Energy, Inc., (Midwest) was added as a defendant because Midwest had purchased the assets and liabilities of Great Plains. At the conclusion of trial, the jury found Darrell and Judy Schrader had sustained total damages of $131,415 and that Michelle Schrader had sustained damages of $50,000. The jury apportioned fault as follows: Michelle Schrader, 15.8%; Mark Dickey, 17%; Great Plains, 35%; and Sherman County Board of Commissioners, 32.2%. In addition, the jury awarded punitive damages of $96,333.

Great Plains appeals from the trial court's determination that it owed a duty of reasonable care to Michelle Schrader in the placement of its guy wire and anchor. Midwest Energy appeals from the trial court's conclusion that, as purchaser of the assets and liabilities of Great Plains, it is jointly liable for the punitive damages assessed against Great Plains.

The accident which gave rise to this lawsuit occurred on December 31, 1986. Michelle Schrader, who was 14 years old, lost control of the vehicle she was driving on a Sherman County road near Goodland. The automobile left the road, striking a utility pole and guy wire owned by Great Plains. Michelle was thrown from the automobile and died at the scene of the accident. Mark Dickey, a passenger in the vehicle, survived.

The road on which Michelle was traveling at the time of the accident was 25 feet wide. The surface of the road changed from blacktop to gravel at a point 801 feet east of the utility pole. The gravel portion of the road contained a number of grooves or

"washboards." The gravel on the surface of the road was unusually deep, measuring between one-half and three-quarters of an inch. The speed limit on both the blacktop and gravel portions of the road was 55 miles per hour. The utility pole in question was located 28'4" from the northern edge of the road. The guy wire ran from the top of the pole to an anchor located in a ditch 19'4" from the road's northern edge.

Mark Dickey testified that when they encountered the loose gravel and "washboard" conditions, Michelle Schrader locked the brakes and the car started to slide. They went into the north ditch and across a driveway, then struck the power pole and guy wire owned by Great Plains. The car then turned over, and Michelle was thrown out.

Great Plains moved for a directed verdict at the close of the plaintiffs' evidence, arguing that it could not be liable for Michelle's death because it owed no duty to her. The motion was denied. Great Plains reiterated this argument in its motion for judgment notwithstanding the verdict, which was also denied.

The Supreme Court has noted: " 'For negligence to exist there must be a duty and a breach thereof before the conduct becomes actionable. If no duty exists there can be no negligence.' " *Cansler v. State*, 234 Kan. 554, 558, 675 P.2d 57 (1984) (quoting *Hanna v. Huer, Johns, Neel, Rivers & Webb*, 233 Kan. 206, 662 P.2d 243 [1983]); see *Madison v. Key Work Clothes*, 182 Kan. 186, 318 P.2d 991 (1957). Whether a duty exists is a question of law, although whether the duty has been breached is a question of fact. *Durflinger v. Artiles*, 234 Kan. 484, 488, 673 P.2d 86 (1983).

In negligence cases, "duty" has been defined as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." Prosser and Keeton on Torts § 53, p. 356 (5th ed. 1984). An act is wrongful, or negligent, only if a prudent person would perceive the risk of damage. The risk to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension. The existence of negligence in a given case will depend upon the particular circumstances which surround the parties at the time of the occurrence on which the controversy is based. *Durflinger*, 234 Kan. at 489; see *Blackmore v. Auer*, 187 Kan. 434, 440-41, 357 P.2d 765 (1960).

The particular circumstances of this case parallel the provisions of Restatement (Second) of Torts § 368 (1964):

"Conditions Dangerous to Travelers on Adjacent Highways.

A possessor of land who creates or permits to remain thereon an . . . artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who

(a) are traveling on the highway, or

(b) *foreseeably deviate from it in the ordinary course of travel.*" (Emphasis added.)

The comments to § 368 provide further guidance:

"[This rule] applies . . . to those who *reasonably and expectably* deviate from the highway and enter upon the abutting land in the ordinary course of travel. The possessor is required to anticipate the possibility of such deviations and to realize, where a reasonable man would do so, that the traveler so deviating may encounter danger. The public right to use the highway carries with it the right to protection by reasonable care against harm suffered in the course of deviations which may be regarded as the *normal incidents of travel.*" (Emphasis added.) Restatement (Second) of Torts § 368, comment e.

"In determining whether the condition is one which creates an unreasonable risk of harm to persons lawfully traveling on the highway and deviating from it, the essential question is whether it is so placed that travelers may be expected to come in contact with it in the course of a deviation *reasonably to be anticipated* in the ordinary course of travel. Distance from the highway is frequently decisive, since those who deviate in any normal manner in the ordinary course of travel cannot be expected to stray very far. . . . Distance is important, however, only as it affects the recognizable risk; and other factors, such as the nature of the condition itself, its accessibility, and the extent and character of the use of the highway, must be taken into account." (Emphasis added.) Restatement (Second) of Torts § 368, comment h.

Although our Supreme Court has not formally adopted this Restatement section, it has focused on the question whether a plaintiff's deviation from the highway was reasonably foreseeable by the defendant. In *Eberhardt v. Telephone Co.*, 91 Kan. 763; 139 Pac. 416 (1914), plaintiff was injured when she was thrown from a runaway wagon. The mules pulling the wagon were frightened by an approaching automobile. They veered to the right, off the roadway, and struck a pole or guy wire belonging to the

defendant. The trial court sustained a demurrer to the plaintiff's evidence, and the Supreme Court affirmed that decision. Although much of the opinion focuses on the issues of probable cause, the court did address the duty issue:

"The party placing the wire four feet and four inches from the pole in the grassy embankment north of the traveled portion of the road cannot be held to have foreseen that a team might become frightened twenty rods east thereof and run upon the embankment. Had the automobile not passed, had it not scared the team, had they not pulled out of the road in spite of the driver's efforts to keep them in it—no harm would have come from the wire, and to hold the company placing it there liable would be to charge it with the duty to foresee all these most uncommon and unlooked for conditions." 91 Kan. at 765.

See also *Thomas v. Board of Trustees of Salem Township*, 224 Kan. 539, 582 P.2d 271 (1978) (driver lost control and struck utility pole six feet north of roadway; directed verdict for utility company affirmed).

Decisions from other jurisdictions require a plaintiff to prove the existence of a particularly dangerous road condition which would make it likely, and thus foreseeable, that vehicles would deviate from the roadway and collide with the particular object alleged to have been negligently maintained. For example, "[w]here there is evidence that a pole is placed at a curve or on a hill with poor visibility, or that cars normally drive at excessive speeds on the adjoining road, there may be a sufficient basis for liability." *Florida Power & Light v. Macias by Macias*, 507 So. 2d 1113, 1116 (Fla. Dist. App. 1987). Evidence of prior accidents at the location of a pole or guy wire may also be sufficient to give notice of the existence of a dangerous condition. *Hoffman v. Vernon Township*, 97 Ill. App. 3d 721, 726-27, 423 N.E.2d 519 (1981). See *NIPSCO v. Sell*, 597 N.E.2d 329, 332-34 (Ind. App. 1992); Annot., 51 A.L.R.4th 602; Annot., 8 A.L.R.5th 177.

The facts of this case do not show the existence of a dangerous condition which would make it foreseeable that vehicles would deviate from the highway and collide with the guy wires. The evidence produced at trial indicated that the pole, guy wire, and anchor involved in the accident had been in place without modification since 1948. Witnesses could only recall one automobile accident in the vicinity of the pole prior to 1986, and the record

does not indicate that the vehicle involved in that accident left the road. A 1987 study by the Kansas Department of Transportation indicated that an average of 213 vehicles a day traveled the road on which Michelle Schrader's accident occurred. Although the road contained washboards and a large amount of loose gravel at the time of Michelle's accident, there is nothing in the record to suggest that these conditions were permanent hazards of which Great Plains should have been aware.

The evidence relied on by the Schraders fails to show that Great Plains should have anticipated the accident in question. Although Great Plains received several letters in the mid-1970s from Sherman County authorities requesting the removal of all guy wires anchored in shoulders and ditches, the testimony of county officials indicated that the letters reflected a concern that guy wires interfered with county mowing operations. None of the correspondence between the county and Great Plains expressed the specific concern that placement of guy wires in ditches created an unreasonable hazard to motorists using the roadway.

The Schraders' reliance on professional studies and the trial testimony of traffic engineer Paul Graves is likewise unavailing. Graves testified at trial concerning the results of a study commissioned by the American Association of State Highway Officials. The study, which was commissioned sometime after the placement of the guy wire and pole in this case, indicated that the removal of fixed objects from within the first 30 feet next to the shoulder of a road would allow 80% of all vehicles leaving the road to stop or re-enter the road without incident.

Graves' testimony was directed at methods of minimizing the risk of collision with fixed objects after an automobile leaves the road. It did not address the issue at hand, which is whether it was reasonably foreseeable that Michelle's vehicle would leave the road in the vicinity of the guy wire in question.

Similar testimony was offered in *Eberhardt*, 91 Kan. at 764:

"The husband testified that the team ran about one hundred feet and swung to the right and hit the guy wire with the front wheel of the wagon; that it was four feet and four inches to the pole from where the guy wire entered the ground; that he could have held the team had it not been for this obstruction, and would have had them under control in a little while."

While it is common knowledge that vehicles on occasion leave the roadway and strike adjacent utility poles and guy wires, a duty to third persons will not be imposed upon those who erect and maintain such objects in the absence of reasonable anticipation of such deviation from the roadway as a normal incident of travel. *Gouge v. Central Ill. Public Service Co.*, 144 Ill. 2d 535, 546, 582 N.E.2d 108 (1991); *Boylan v. Martindale*, 103 Ill. App. 3d 335, 342, 431 N.E.2d 62 (1982); *McMillan v. State Hwy Comm*, 130 Mich. App. 630, 637, 344 N.W.2d 26 (1983); .

Negligence must be predicated upon what one should anticipate rather than merely on what actually happened. *Hellman v. Julius Kolesar, Inc.*, 399 N.W.2d 654, 656 (Minn. App. 1987). That someone, after an accident, can think of things which, if done, might have made the accident less likely does not constitute proof of negligence. *Wasson v. Brewer's Food Mart, Inc.*, 7 Kan. App. 2d 259, 265, 640 P.2d 352, *rev. denied* 231 Kan. 802 (1982). In this case, given the length of time the guy wire at issue had been in place, the volume of traffic on the adjacent road, and the lack of similar accidents at the same location, it cannot be said that it was reasonably foreseeable that a member of the traveling public would stray from the road and collide with the guy wire erected and maintained by Great Plains. Furthermore, the evidence in the record indicates that, at the time of Michelle's accident, Great Plains was responsible for maintaining approximately 12,000 utility poles. To require the utility company to move every anchor and guy wire which posed a remote risk to motorists would result in the creation of a costly and undue burden. *Gouge*, 144 Ill. 2d at 548; see *Wilson v. Kansas Power & Light Co.*, 232 Kan. 506, 513-14, 657 P.2d 546 (1983). It follows that Great Plains owed no duty to Michelle Schrader in this particular instance, and therefore her parents have no legitimate negligence claim against the utility company.

Because the trial court erred in determining that Great Plains owed a duty to Michelle Schrader in these circumstances, the judgment against Great Plains is reversed. Because the liability of Midwest Energy was predicated on Great Plains' liability, the judgment against Midwest Energy is also reversed.

Reversed.