**Genaro GARAY and Eva Garay, parents and heirs of Nicholas Garay, deceased, and Ann Case, personal representative and administrator of the estate of Nicholas Garay, Plaintiffs,**

v.

**MISSOURI PACIFIC RAILROAD COMPANY, a corporation, Union Pacific Railroad Company, a corporation, and Trinity Industries, Inc., individually and as successor to Pullman–Standard, Inc., and FMC Corporation, Defendants.**

No. 96–1127–WEB.

United States District Court,
D. Kansas.

Aug. 26, 1999.

Pedro L. Irigonegaray, Irigonegaray & Associates, Topeka, KS, Robert L. Pottroff, Myers, Pottroff & Ball, Manhattan, KS, Bradley W. Maudlin, Loyd & Maudlin Law Offices, LLC, Garden City, KS, for Plaintiffs.

James M. Yeretsky, Gregory F. Maher, Michael J. Smith, Yeretsky & Maher, L.L.C., Kansas City, MO, Kenneth L. Weltz, Lathrop & Gage L.C., Overland Park, KS, Brad W. Schacht, Hugh Q. Gottschalk, Todd A. Fredrickson, Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Denver, CO, for Defendants.

### Memorandum and Order

WESLEY E. BROWN, Senior District Judge.

This matter is before the court on the renewed Motion for Judgment as a Matter of Law of defendant Union Pacific Railroad Company[1] (Doc. 182), and on plaintiff's Motion to Alter or Amend the Judgment (Doc. 184). The court has reviewed the materials submitted and is familiar with the issues presented. Oral argument would not assist in deciding the motions.

This case arose out of the death of Nicholas Garay on April 6, 1994. On that date, Mr. Garay was employed at a company named Bean Acres, Inc., in Sharon Springs, Kansas, when he suffocated in a load of pinto beans inside a hopper rail car. The plaintiffs claimed that the defendant railroad, as the owner of the rail car, rail siding and cargo, was negligent in failing to properly warn Mr. Garay of the hazard of suffocation associated with unloading grain from the hopper car. The matter was tried to a jury. At the close of plaintiff's case, the defendant moved for judgment as a matter of law under Fed. R.Civ.P. 50(a), and the court took the motion under advisement. The defendant then rested without presenting evidence and renewed its motion. The court again took the matter under advisement and the case was submitted to the jury. After the jury returned a verdict in favor of the plaintiffs, the defendant timely renewed its motion for judgment as a matter of law pursuant to Rule 50(b).

### I. Summary.

The following is not intended to be an exhaustive recitation, but is merely a summary of the evidence presented at trial relating to the accident on April 6, 1994. The plaintiffs called seven witnesses and presented various documentary evidence in their case. The first witness was Genaro Garay, Nicholas' father, who testified that Nicholas had obtained a job at Bean Acres loading bags of beans onto rail cars. Nicholas had never worked around rail cars before. On April 6, Mr. Garay received a telephone call informing him that Nicholas had been in an accident. Mr. Garay and other members of his family went to the scene, where from a distance they could see workers trying to free Nicholas, who was trapped in a load of beans in the bottom of a hopper rail car. Mr. Garay recounted the agony he and other family members felt as they waited nearly two hours while workers tried to free Nicholas. He testified about how the workers finally got Nicholas out, how he was able to go to Nicholas as they were putting him in an

---

1. Pursuant to the parties' stipulation, the two railroad defendants in this case are collectively referred to as the Union Pacific Railroad Company.

ambulance, and how at that time Nicholas was cold and was covered with dirt and beans. Mr. Garay also identified photographs received in evidence which showed that Nicholas' jacket and cap were left on top of the hopper rail car in which he had died.

Plaintiffs' second witness was engineer John Sevart. He testified at length about the knowledge available to design engineers concerning the suffocation hazard posed by flowing grain and the need for warnings on equipment used in moving or storing grain. He testified that such a hazard is recognized and warned against in the grain transportation and storage industry, and that this hazard was present in the hopper car in which Nicholas Garay died. He testified that there are more than fifty deaths per year in the grain industry. Interrogatory answers of the Union Pacific were introduced through Mr. Sevart showing that UP asserted there was no hazard associated with unloading grain from the hopper car and that the railroad had no duty to warn of any such hazard. Mr. Sevart testified that the hopper car should have had a warning on it about the hazard of suffocation, and he devised a warning sign that he contends would have been appropriate. Mr. Sevart testified that FMC, which manufactured the rail car in 1967, had the duty to design a safe car, that the rail car should have had a warning on it when FMC built it in 1967, and that FMC had the primary duty to retrofit the car with an appropriate warning.[2]

Evidence was introduced that the hopper car had a caution sign on it stating that the top hatches should always be open when unloading cargo. Circumstantial evidence indicated that UP added this warning sometime after it purchased the car from FMC. Mr. Sevart testified that this warning was inappropriate because the top hatch did not have to be open to unload the cargo and because having the hatch open eliminated the safety provided by a closed hatch.

On cross-examination, Mr. Sevart conceded he knew of no rail car manufactured between 1967 and 1981 with a warning of the type he proposed, although he noted that some cars have a "confined space" warning. He was also unaware of any railroad industry or government group that has issued a warning of the type he proposed. He testified that as far as he knew the hopper car was in compliance with federal and industry regulations. He agreed with an estimate that hopper cars in North America are loaded and unloaded on an annual basis in excess of 100 million times. He conceded that unloading the car with the top hatches closed could cause the roof of the car to collapse if car's air vents were completely clogged.

Plaintiff's next witness was Dr. Jill Gould, M.D., a forensic pathologist who examined medical records relating to Nicholas Garay's death. She testified that the cause of death was suffocation. She also testified that Nicholas was alive at the time his airway was occluded, although she could not say whether he was conscious at that time.

Plaintiff's next two witnesses were economist Gary Baker and UP representative James Eisele. Neither of these individuals had any significant testimony concerning the accident on April 6, 1994.

Plaintiff next called Leighton Johnson, who was the chief engineer for the company that designed the hopper car. He said the car was designed with vents on the end so that the top hatches did not have to be open during unloading. He also testified that the caution sign on the hopper car (stating that the top hatch must be open during unloading) was not placed there by the manufacturer. Johnson testified that the car was designed to unload into an underground pit, and was designed with a "shaker pad" for a vibrator to help discharge product from the car.

Lastly, plaintiff produced deposition testimony from Rick Carson, a supervisor at

2. Despite this testimony, the jury found no fault on the part of FMC.

Bean Acres, who testified that Nicholas was a good employee who worked hard.

## II. *Arguments.*

The railroad argues there is no evidence upon which a jury could properly find negligence on its part or that such negligence was the cause of Nicholas Garay's death. It points out that the plaintiffs presented no evidence of the particular facts surrounding the accident on April 6th or of the decedent's job responsibilities at that time. Nor was any evidence presented from any of Nicholas' co-workers about what Nicholas was doing at the time of the accident. Defendant further argues there was no evidence as to how or why Nicholas was in the hopper car or to show that a failure to warn about the hazard of working with grain was the cause of his death. Defendant argues this case is similar to *Martin K. Eby Const. Co. v. Neely,* 344 F.2d 482 (10th Cir.1965), in which the plaintiff was killed when he fell from a scaffolding. In that case, the court granted a directed verdict for the defendant based upon a lack of evidence as to the cause of the accident.

In response, plaintiffs first argue that defendant's original motion for judgment was deficient under Rule 50(a) because it failed to specify the law and facts upon which it was based. Additionally, plaintiffs assert that the facts surrounding the accident were presented through the testimony of their expert, Mr. Sevart, and that the defendant waived any objection to such evidence by failing to object or request a limiting instruction. Plaintiffs contend that Mr. Sevart's testimony "summarized the co-worker deposition testimony" and "actually placed the decedent in the car," thereby permitting the jury to find that Nicholas and Bean Acres were permissive users of the hopper car. Pl.Resp. at 8. Plaintiffs also note that Nicholas' jacket and cap were found on the rail car. Plaintiffs further contend that Mr. Sevart's testimony showed that the railroad should have been aware the hopper car was dangerous to users like Nicholas Garay, and the railroad therefore had a duty to warn

of such danger. Plaintiffs contend that the stenciled warning on the rail car (that the top hatch should be open before unloading) "invited personnel like the decedent on top of the car" and "needlessly placed the decedent in harm's way." *Id.* at 10. Plaintiffs argue there is a rebuttable presumption of causation under Kansas law when an inadequate warning is given, as well as a presumption that an adequate warning will be heeded, and that such presumptions combined with the lack of evidence of any intervening cause make it a jury question as to whether the defendant's failure to warn was the proximate cause of Nicholas Garay's death.

## III. *Standards.*

Judgment as a matter of law is appropriate only "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party." Fed.R.Civ.P. 50(a)(1); *see also Davis v. United States Postal Serv.,* 142 F.3d 1334, 1339 (10th Cir.1998) ("[A] court may grant the motion only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position."). In considering such a motion, the court must construe the evidence and inferences therefrom in a light most favorable to the nonmoving party. *See Wilson v. Tulsa Junior College,* 164 F.3d 534, 536 (10th Cir.1998).

## IV. *Discussion.*

As an initial matter, the court rejects plaintiffs' suggestion that the defendant's motion for judgment should be denied for lack of specificity. The defendant adequately identified the factual and legal basis of its motion in accordance with Rule 50.

The plaintiffs claimed in this action that the railroad negligently failed to warn Nicholas Garay about the hazard of entrapment and suffocation from unloading grain from the hopper rail car. To recover

for negligence, a plaintiff must prove the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered. *Hesler v. Osawatomie State Hospital,* 971 P.2d 1169, 1174 (Kan.1999).

■ Under the court's instructions to the jury, the railroad had a duty to warn permissive users of the rail car if it could have reasonably anticipated injury to the user in the absence of a warning. No duty to warn would exist, however, with respect to precautions that the user did or should have known about, to actions that a reasonable user would have taken, or to dangers that were obvious and should have been realized by the user. *See* Doc. 175, Instruction 18. The problem with plaintiffs' argument that a reasonable jury could find facts to support a duty to warn in this case is that there was a complete lack of evidence to show what Nicholas Garay was doing at the time of the accident, what he knew about the alleged hazard, and the circumstances of how he became entrapped in the hopper car. As the defendant points out, no evidence was presented as to why Nicholas was in the car, how he got there, what he was doing when he became entrapped, whether he had been instructed to go in or on top of the car, what his job duties were, what training he had received, or whether co-workers had warned him (or he was otherwise aware) of the dangers of suffocating in

grain. Absent some evidence to show the circumstances under which Nicholas was using the car, it is only through speculation that a jury could conclude the railroad had a duty to warn Nicholas of the hazard of entrapment and suffocation and that the failure to do so caused his death.[3]

■ The court must reject plaintiffs' argument that the co-workers' testimony and the circumstances of the accident were established through the testimony of plaintiff's expert witness, John Sevart. It is true that Rule 703 permits an expert to rely upon certain types of hearsay evidence in forming an opinion, and that Mr. Sevart recounted a brief portion of the co-workers' testimony during his direct examination. *See e.g.,* Doc. 179 at 59–63. But Rule 703 merely allows an expert to formulate and explain the basis of his opinion; it does not authorize a party to prove the truth of hearsay declarations by having an expert echo the deposition testimony of individuals who witnessed the underlying events. *See Engebretsen v. Fairchild Aircraft Corp.,* 21 F.3d 721, 729 (6th Cir.1994). Plaintiffs' argument that the defendant waived any such error by failing to object is unpersuasive. The record shows the defendant did challenge such testimony. *See* Doc. 179 at 60, 63. After the defendant objected to Mr. Sevart commenting upon facts not in evidence, counsel for the plaintiffs simply asked Sevart whether anything he had read in the depositions

---

**3.** The court notes that the evidence presented at trial differed significantly from the evidence cited on summary judgment. In opposing summary judgment, plaintiffs cited deposition testimony from Garay's co-workers to establish what Nicholas was doing at the time of the accident. In denying summary judgment, the court observed that such testimony provided circumstantial evidence from which a reasonable jury could find that the employees were having difficulty getting beans to flow out of the car while they were unloading the cargo, that Nicholas had entered the car to check on or to facilitate the flow of beans, and that he became entrapped when a section of beans collapsed from under him. Doc. 93 at 14. The court also found a genuine issue of fact as to whether Nicholas appreciated the hazard of being suffocated—

despite deposition testimony from co-worker Jesus Pondo that he told Nicholas "not to be on top of the hopper car because it was dangerous and that he could possibly suffocate" and despite testimony that Garay told his brother sometimes beans got moist and would stick to the walls of a hopper car and that he would have to get up on the edge of the car and work with a shovel, and that if anybody fell inside a car there was nothing there they could grab on to, to pull themselves out— because of testimony from another co-worker that nobody told Nicholas about it being dangerous to be in the car during unloading, as well as testimony that Nicholas was seen with Pondo sitting on the beans inside the car shortly before Nicholas became entrapped. *Id.* at 16–18. No testimony from any of the co-workers was presented at trial.

would change his opinion. *Id.* at 64. This shows that the plaintiffs had Mr. Sevart state his understanding of the deposition testimony merely for the purpose of explaining his opinion. *Id.* at 63–64; 82–83. Plaintiffs correctly point out that the jury was not given any limiting instruction on consideration of such evidence. That is true, however, only because it was obvious that Mr. Sevart was merely explaining the basis for his opinions and that any deposition testimony cited by him was not offered to prove how the accident occurred. Moreover, even if Mr. Sevart's recitation of this deposition testimony could be considered as evidence of the underlying events, in light of his cryptic references to the witnesses' testimony it would still be insufficient to establish how the accident happened.[4]

Plaintiffs argue that it makes no difference how or why Nicholas became entrapped: "[R]egardless for the reason for the decedent's presence on or in the hopper car, Sevart indicates that an adequate warning was required to keep people out." Pl.Resp. At 10. The suggestion that the railroad is responsible no matter what happened ignores the requirements of foreseeability and proximate cause that are central to a claim of negligence.[5] As the court discussed previously, the railroad had a duty to warn only insofar as injury to a user of the car could reasonably be anticipated. Plaintiffs argue that Nicholas' death was foreseeable, yet offered no evidence to show how it came about. Moreover, the railroad had no duty to warn with respect to knowledge Nicholas actually possessed or that he should have possessed.[6] Given the total absence of evidence concerning Nicholas' state of knowledge, his prior experience working with grain, his employment training, what he was doing at the time of the accident, instructions given to him by his employer, and warnings conveyed to him by co-workers, it is only through speculation that one can assume the predicate facts giving rise to a duty to warn or conclude that the railroad's failure to warn was the cause of Nicholas' death. *Cf. Schmidt v. HTG, Inc.,* 265 Kan. 372, 381, 961 P.2d 677, 685 (1998) ("In every instance, before an act is said to be negligent, there must exist a duty to the individual complaining, the observance of which would have averted or avoided the injury....").

Plaintiffs argue the jury could have found that the railroad's negligence caused Nicholas' death because the stenciled caution about opening the top hatch before unloading "invited personnel like the decedent on top of the car." Pl.Resp. at 10. This theory—that the railroad is responsible because the caution sign "placed [Nicholas] in harm's way"—also assumes a number of facts not in evidence, including that Nicholas or someone else at Bean Acres saw the caution sign and opened the hatches because of it, and that Nicholas would not have been in the car but for the caution sign. These are not reasonable inferences arising from the evidence presented at trial; they are pure speculation.

■ Lastly, plaintiffs contend the evidence was sufficient to support the verdict because there is a presumption of causation under Kansas law in cases of inade-

---

4. Mr. Sevart recognized in his testimony that the co-workers had conflicting accounts of the accident. Doc. 179 at 60–61.

5. "An act is wrongful, or negligent, only if a prudent person would perceive the risk of damage. The risk to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension. The existence of negligence in a given case will depend upon the particular circumstances which surround the parties at the time of the occurrence on which the controversy is based." *Schrader v. Great Plains Elec. Co-op.,* 19 Kan.App.2d 276, 278, 868 P.2d 536, 537 (1994), *rev. denied,* June 15, 1994.

6. Mr. Sevart recognized as much when he explained why he reviewed the depositions to determine whether any co-workers had warned Nicholas about the hazard: "If he already knows everything and, you know, [is] perfectly versed on this problem, why, then, [a] warning is not so important." Doc. 179 at 63.

quate warning. *See Patton v. TIC United Corp.*, 77 F.3d 1235, 1242 (10th Cir.1996). This argument is unavailing. First, as noted above, the evidence failed to establish the predicate facts giving rise to a duty to warn on the part of the railroad. There is simply insufficient evidence in this record from which a jury could conclude—without resorting to speculation—that a failure to warn on the railroad's part caused Nicholas' death. Second, although some Kansas cases have recognized a presumption of causation on claims involving a manufacturer's liability for an unreasonably dangerous product, no authority has been cited recognizing such a presumption in a case such as this, where the defendant's liability is essentially based a failure to warn a business invitee of a dangerous condition upon its premises.

The court is reluctant to overturn any jury verdict, let alone one where a family has suffered such a grievous loss. But the law required the plaintiffs to produce evidence from which a reasonable jury could conclude that the defendant was responsible for that loss. No evidence was presented to show how or why this accident occurred, and it is only through speculating about what may have happened that the jury could have concluded the railroad had a duty to warn Nicholas Garay and that its failure to do so caused his death. Under these circumstances, the defendant is entitled to judgment as a matter of law on the claim for negligence.

In view of the court's conclusion, the remaining arguments raised by the defendant and the plaintiffs' motion to alter or amend the judgment are moot.

V. *Conclusion.*

Defendant Union Pacific Railroad Company's Renewed Motion for Judgment as a Matter of Law (Doc. 182) is GRANTED. The judgment previously entered in favor of the plaintiffs against the Union Pacific and Missouri Pacific Railroad Companies is hereby vacated, and the clerk is directed to enter a judgment of dismissal against the plaintiffs and in favor of the defen-dants Missouri Pacific Railroad Company and Union Pacific Railroad Company.

Plaintiffs' Motion to Alter or Amend the Judgment (Doc. 184) is DENIED as moot.