OPINION
Plaintiffs-appellants, Paul Y., Gabriel, and Damien Hurier,[1] appeal the decision of the Clermont County Court of Common Pleas granting summary judgment to defendants-appellees, Paul D. and Lillie M. Gumm,[2] in appellants' wrongful death and personal injury suit.
At approximately 11:00 a.m. on January 18, 1993, Gabriel, then a minor, was driving the family's 1989 Dodge Caravan minivan on State Route 125 in Amelia, Clermont County, Ohio. State Route 125 is an undivided four-lane highway, with two lanes dedicated to traffic in each direction. Gabriel was driving eastbound in the left or inside lane. Constance and Natalie were passengers and were both sleeping. Neither was wearing a seat belt. Gabriel fell asleep at the wheel and the minivan veered across the right lane and off the highway shoulder. The minivan struck a mailbox and careened down a drainage slope, colliding with a drainage pipe and two brick decorative walls located at a small driveway bridge on appellees' property at 2305 State Route 125.
The driveway bridge spanned a drainage culvert which ran beside the highway. The twenty-inch wide culvert pipe the minivan struck was located underneath the bridge. The decorative walls were built on the edges of the bridge and were eighteen inches high. The decorative walls were built in 1973, when appellees' home was constructed, and were located seventeen feet from the edge of the highway. The bridge, pipe and decorative walls were all located within the right-of-way of State Route 125 and within the Ohio Department of Transportation ("ODOT") designated "clear zone," an area which was to remain clear of impediments to traffic for safety purposes. When built, the bridge and decorative walls were not within the "clear zone." Appellees had obtained a permit to build the bridge, but appellants dispute whether the permit allowed the walls to be built.
When the minivan hit the decorative walls and culvert pipe, it flipped over. The minivan was destroyed and Constance was trapped inside. When emergency personnel from BMOP Fire Company Amelia, Ohio ("BMOP") arrived, Gabriel was walking around the scene. Natalie had been ejected from the minivan and was lying on her back. Constance was trapped in the minivan and unconscious. The emergency crew found the van teetering on its side. After the minivan was stabilized, Constance was given oxygen and extricated. She was transported to the Clermont Mercy Hospital emergency room. Constance sustained massive cranial, torso, and leg injuries, and she later died. Natalie suffered non-fatal but serious injuries. Gabriel suffered slight injuries.
On January 22, 1997, appellants filed a complaint for Constance's wrongful death, Gabriel and Natalie's injuries, medical expenses, and pain and suffering, appellants' loss of consortium, and property damage. They alleged that appellees had illegally and negligently built the decorative walls. They further alleged that BMOP had been negligent in the initial care of Constance. A suit was also filed against the ODOT in the Ohio Court of Claims. On February 5, 1997, appellees filed an answer and counterclaim. On February 25, 1997, BMOP filed its answer and counterclaim. In their counterclaims, appellees and BMOP sought to be indemnified by Gabriel, claiming that his negligence had caused the accident.
On July 11, 1997, BMOP filed a motion for summary judgment on the claims against it. On September 16, 1997, the trial court filed a decision denying BMOP's motion for summary judgment. On July 16, 1998, appellees filed a motion for summary judgment, arguing that they had no notice that the decorative walls were a hazard or an unreasonable risk to those on the highway. On October 23, 1998, BMOP was voluntarily dismissed pursuant to a settlement agreement. On November 20, 1998, appellants filed a memorandum in opposition to appellees' motion for summary judgment.
On December 7, 1998, the trial court filed a decision granting appellees' motion for summary judgment. The trial court found that the "clear zone" was not a mandate, but only a safety guideline which ODOT enforced where necessary. The court found that the issue of whether an owner of land is liable to those traveling on adjacent highways had yet to be addressed in Ohio. The trial court found that owners who create an artificial condition upon their lands are liable to those who foreseeably deviate from the highway in the ordinary course of travel, but liability does not attach when the driver's deviation from the road is due to the driver's own negligence. The trial court ruled that appellees did not have reason to believe that the decorative walls posed a danger, and that appellants had not demonstrated that Gabriel's deviation from State Route 125 was foreseeable. Appellants appeal, raising a single assignment of error:
 THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING DEFENDANT-APPELLEES" [SIC] MOTION FOR SUMMARY JUDGMENT.
 In their sole assignment of error, appellants contend that the trial court erred as a matter of law by failing to address their argument that appellees had created and maintained a public nuisance by illegally constructing the decorative walls. Appellants further contend that the trial court failed to construe the evidence in their favor when ruling upon their negligence claims.
Pursuant to Civ.R. 56(C), the trial court may grant summary judgment where there is no genuine issue as to any material fact.Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344,346. Summary judgment will be granted if reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made. Id. An issue of fact exists when the relevant factual allegations in the pleadings, affidavits, depositions or interrogatories are in conflict. Linkv. Leadworks Corp. (1992), 79 Ohio App.3d 735, 741. A dispute of fact is "material" if it affects the outcome of the litigation, and is "genuine" if demonstrated by substantial evidence going beyond the allegations of the complaint. Burkes v. Stidham
(1995), 107 Ohio App.3d 363, 371.
In deciding whether there is a genuine issue of material fact, the evidence must be construed in the nonmoving party's favor. Hannah v. Dayton Power Light Co. (1998), 82 Ohio St.3d 482,485. Further, "the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." Id., citing Turner v. Turner
(1993), 67 Ohio St.3d 337, 341. In reviewing the moving party's motion, a trial court should award summary judgment with caution.Welco, 67 Ohio St.3d at 346. Nevertheless, a summary judgment is appropriate where a plaintiff fails to produce evidence supporting the essential elements of his claim. Id.
In determining whether the plaintiff demonstrated the elements of his claim, an appellate court must independently review the record to determine if summary judgment was appropriate. Therefore, an appellate court affords no deference to the trial court's decision when making its own decision.Beardsley v. Manfredi Motor Transit Co. (1994), 97 Ohio App.3d 768,769.
Appellants contend that the trial court erred by not determining that the decorative walls were a public nuisance. Appellants contend that the decorative walls were built within the ODOT "clear zone" without a permit.
The law of nuisance is an especially vague and often misunderstood area of tort law, having been described as the most "impenetrable jungle in the entire law." Brown v. Scioto Cty. Bd.of Commrs. (1993), 87 Ohio App.3d 704, 712, quoting Prosser 
Keeton, The Law of Torts (5 Ed. 1984), 616, Section 86. Originally, "nuisance" was confined to cases which called for the application of strict liability. Taylor v. Cincinnati (1944),143 Ohio St. 426, 436. Today, "nuisance" is not restricted to a single type of tortious conduct, and distinguishing the various types of nuisances is central to a proper analysis of any nuisance claim. Id. at 431-432.
"Nuisance" is a term used to designate "the wrongful invasion of a legal right or interest." Id. at 432. Nuisance comprehends the wrongful invasion of the use and enjoyment of property or of personal rights and privileges. Id. The liability of the defendant, as well as the plaintiff's entitlement to relief, will depend upon both the nature of the alleged nuisance and the conduct of the defendant. Nuisance may be first designated as "private" or "public." Brown, 87 Ohio App.3d 704, 712. Both of these types of nuisances may then be further categorized as "absolute nuisance (nuisance per se)" or "qualified nuisance."Taylor, paragraphs two and three of the syllabus.
"Public nuisance" involves the invasion of "public rights" common to all members of the public. Brown,87 Ohio App.3d at 712. A public nuisance is "an unreasonable interference with a right common to the general public." Id. A public nuisance will not arise because a large number of people are affected. Rather, it arises only when a public right has been affected. Id. Certain conduct may be defined by statute or administrative regulation as being a public nuisance. Id.
A public nuisance provides a basis for recovery of damages only where the harm suffered by the plaintiff is a "particular harm * * * that is of a different kind than that suffered by the public in general." Id. at 714. To recover damages under a claim of public nuisance, the plaintiff must establish, first, an interference with a public right and, second, that the plaintiff has suffered an injury distinct from that suffered by the public at large. Miller v. Carrollton (1993), 91 Ohio App.3d 291,295-296, appeal dismissed (1994), 69 Ohio St.3d 1403. The harm suffered by the plaintiff must be different in kind, rather than different in degree, from that suffered by other members of the public exercising the public right. Id. Where the plaintiff exercises the public right "extraordinarily more" than the general public and where the plaintiff's reason for doing so "invariably amounts to a different kind of interest in the public right," the plaintiff will satisfy the special injury rule. Id. at 296.
As contrasted with a public nuisance, a "private nuisance" is "a nontrespassory invasion of another's interest in the private use and enjoyment of land." Brown, 87 Ohio App.3d at 712. Unlike a public nuisance, a private nuisance threatens only one or few persons. Taylor, 143 Ohio St. at 442, citing McFarlane v. NiagaraFalls (1928), 247 N.Y. 340, 160 N.E. 391. The basis for a private nuisance claim is an interference with the plaintiff's use and enjoyment of his or her land. See Ogle v. Kelly (1993), 90 Ohio App.3d 392, jurisdictional motion overruled (1994), 68 Ohio St.3d 1448; see, also, Brown, 87 Ohio App.3d 704. In order for a private nuisance to be actionable, the invasion must be either (a) intentional and unreasonable, or (b) unintentional but caused by negligent, reckless, or abnormally dangerous conduct. If the conduct is abnormally dangerous, the court must balance the utility and benefit of the alleged nuisance against the invasion and harm caused. Id. at 712-713.
"Nuisance" may be further divided into "absolute nuisance (nuisance per se)" and "qualified nuisance." The distinction between the categories is not the right or injury asserted, as is with public and private nuisances. Rather, the distinction between "absolute" and "qualified" nuisance depends upon the conduct of the defendant.
"Absolute" nuisance is that for which strict liability will attach. Taylor, 143 Ohio St. 426, paragraph two of the syllabus. An absolute nuisance consists of
 either a culpable and intentional act resulting in harm, or an act involving culpable and unlawful conduct causing unintentional harm, or a nonculpable act resulting in accidental harm, for which, because of the hazards involved, absolute liability attaches notwithstanding the absence of fault.
 Metzger v. Pennsylvania, Ohio Detriot RR. Co. (1946), 146 Ohio St. 406, paragraph one of the syllabus. Strict liability will arise where one does or allows anything to be done "without just cause or excuse, the necessary consequence of which interferes with or annoys another in the enjoyment of his legal rights." Taylor, 143 Ohio St. 426, paragraph two of the syllabus. Strict liability will also attach where there is "the violation of law resulting in a civil wrong or harm." Id. at 433. This is especially so when it is a safety statute which is violated. Id.
When the defendant commits an unlawful act that is deemed to be an absolute nuisance, the defendant becomes an "insurer" and will be liable for "loss resulting from harm which may happen in consequence of it to persons exercising ordinary care, irrespective of the degree of skill and diligence exercised by himself * * * to prevent such injury." Id. at 434. Thus, a private individual may not interfere with a road or highway without first obtaining permission from the proper authorities, and to so interfere with a roadway without permission is an absolute wrong for which the wrongdoer becomes an insurer, regardless of his prudence and care in preventing injury. Id.
Strict liability will also attach when one is using one's lands or property for activities which are unreasonably hazardous.Id. at 434. Under such circumstances, one is under a duty to confine any such hazard. Failure to do so will make one "prima facie answerable for all the damage which is the natural consequence of its escape." Id. at 435.
In short, when one commits an unlawful act or is involved in an abnormally dangerous activity, the court considers such activities to be "inherently injurious" and incapable of being "conducted without damaging someone else's property or rights," and strict liability attaches to the activity. Brown,87 Ohio App.3d at 713. Conversely, where one has complied with applicable statutes and regulations, or where one has been given permission or authority to operate or erect the alleged nuisance, an absolute nuisance will not be found. Id.
In contrast, "qualified" nuisance is premised upon negligence. To recover damages for a qualified nuisance, negligence must be averred and proven. Id. at 713 and 715; AllenFreight Lines, Inc. v. Concol. Rail Corp. (1992), 64 Ohio St.3d 274,276. Thus, the allegations of nuisance and negligence merge, as the nuisance claims rely upon a finding of negligence. Id.
A qualified nuisance is a lawful act "so negligently or carelessly done as to create a potential and unreasonable risk of harm, which in due course results in injury to another." Metzger,146 Ohio St. 406, paragraph two of the syllabus. Under such circumstances, the nuisance arises from a failure to exercise due care. Taylor, 143 Ohio St. at 436. Even that which was lawful in origin may become a nuisance through "negligence in maintenance."Id. at 442, quoting McFarlane, 247 N.Y. 340, 160 N.E. 391.
In an action based upon the maintenance of a qualified nuisance, the standard of care is
 that care a prudent man would exercise in preventing potentially or unreasonably dangerous conditions to exist; it is the same standard of care required of owners and occupiers of land toward business invitees.
 Blair v. Ohio Dept. of Rehab. Corr. (Ct.Cl. 1989), 61 Ohio Misc.2d 649, 658. This duty is "to exercise ordinary or reasonable care so that the premises are kept in a reasonably safe condition." Id., citing Drexler v. Labay (1951), 155 Ohio St. 244. The duty of the owner or occupier is relieved to the extent that a "duty of self-protection" rests upon the invitee. Blair, 61 Ohio Misc.2d at 658.
In the context of nuisance, when an abutting landowner uses the highway right-of-way in a manner inconsistent with a highway purpose, and where such usage constitutes an unreasonable hazard to users of the highway, the landowner may be liable for damages proximately caused by the improper use of the right-of-way.Manufacturer's Natl. Bank v. Erie Cty. Road Comm. (1992), 63 Ohio St.3d 318, paragraph two of the syllabus. In Mfr's. Natl. Bank, one of the respondents, Boos, grew crops in the right-of-way near a highway intersection without permission from local authorities. This use was found to not be for a highway purpose, to have created a hazard, and to be inconsistent with the purpose of the right-of-way. Id. at 323-324.
In light of the law discussed above, we now must determine whether appellees' construction and maintenance of the decorative walls were a nuisance. We first note that appellants' suit is not based upon an interference with the use and enjoyment of property or rights exclusive to them. Instead, their suit is founded upon the assertion that appellees' decorative walls interfered with the right of travelers generally to go upon State Route 125. Thus, appellants' suit is one seeking recovery for a public nuisance, as it asserts a right of the general public.
Appellants first assert that the decorative walls are an absolute nuisance. Appellants argue that the decorative walls were erected in the "clear zone" of State Route 125 without a proper permit.
"Road" and "highway" are defined in R.C. 5515.01(C):
 "Road" or "highway" includes bridges, viaducts, grade separations, appurtenances, and approaches on or to such road or highway.
"Right-of-way" is defined in R.C. 4511.01(UU)(2):
 A general term denoting land, property, or the interest therein, usually in the configuration of a strip, acquired for or devoted to transportation purposes. When used in this context, right-of-way includes the roadway, shoulders or berm, ditch, and slopes extending to the right-of-way limits under the control of the state or local authority.
 Before one may build any obstruction upon a road or highway or a right-of-way, one must seek a permit. R.C. 5515.03 provides, in pertinent part:
 No individual * * * shall place or maintain any * * * obstruction within the bounds of any road or highway on the state highway system without first obtaining the consent and approval of the director.
 Individuals whose land abuts a road or highway are under a duty to remove any unlawful obstructions constructed without a permit pursuant to R.C. 5515.03:
 Occupants of land situated along the roads and highways of the state highway system shall remove all obstructions within the bounds of such roads and highways which have been placed there either by themselves or their agents, or with their consent, and not under a franchise or permit legally granted.
 A review of the record, including appellees' permit application to build the driveway bridge and the permit issued for construction of the driveway bridge, does not demonstrate that appellees illegally built the decorative wall. The permit application requires only a general description of the work to be performed, as well as a plan for the proposed construction. The plan was required to contain the location and dimensions of the proposed driveway bridge. It is clear that the focus of the application permit is not whether decorative structures are to be attached to the driveway bridge. Instead, the permit application includes numerous details and restrictions concerning drainage and the restoration of any roadside landscaping which is disturbed by the construction. More importantly, the permit indicated that any approved construction could be done only upon inspection, and appellants did not demonstrate that any part of the construction was objected to by the inspector.
Given that appellees received a permit to construct the driveway bridge, and that at no time were objections raised to the decorative walls, appellants have failed to show that the decorative walls were unlawfully constructed. The only evidence in the record on this issue demonstrates that the decorative walls were a properly permitted part of the driveway bridge. As the decorative walls were lawfully built, they were not an absolute nuisance within the definition set forth in Taylor and Metzger.
Appellants argue in the alternative that the decorative walls were a qualified public nuisance because appellees had notice that they were an unreasonable hazard to traffic on State Route 125. Appellants argue that the decorative walls were an unreasonable hazard because there was a prior accident involving the decorative walls and the decorative walls were within the ODOT "clear zone."
Once a permit application has been filed, the director of transportation is given extensive power over the construction and maintenance of any potential obstructions to travel. R.C. 5515.01
provides in relevant part:
 The director of transportation may upon formal application being made to the director, grant a permit to any individual, firm, or corporation to use or occupy such portion of a road or highway on the state highway system as will not incommode the traveling public. Such permits, when granted, shall be upon the following conditions:
 (A) The occupancy of such roads or highways shall be in the location as prescribed by the director.
 (B) Such location shall be changed as prescribed by the director when the director deems such change necessary for the convenience of the traveling public, or in connection or contemplation of the construction, reconstruction, improvement, relocating, maintenance, or repair of such road or highway.
 (C) The placing of objects or things shall be at a grade and in accordance with such plans, specifications, or both, as shall be first approved by the director.
 The director may order the removal of structures, pursuant to R.C. 5515.02:
 All individuals * * * using or occupying any part of a road or highway on the state highway system * * * with * * * any object or structure, other than by virtue of a franchise or permit granted an in force, shall remove from the bounds of such road [or] highway * * * [the] objects or structures, when in the opinion of the director of transportation they constitute obstructions in such roads [or] highways * * * or interfere or may interfere with the use of the such roads [or] highways * * * by the traveling public.
 All individuals * * * so occupying any road or highway on the state highway system * * * by virtue of a franchise or permit granted and still in force shall relocate their properties and all parts thereon within the bounds of such road [or] highway * * * when in the opinion of the director they constitute obstructions in any such road [or] highway * * * or interfere with or may interfere with the use of such road [or] highway * * *, which such relocation within the bounds of such road [or] highway * * * shall be in the manner and to the extent prescribed by the director.
 If, in the opinion of the director, such individuals * * * have obstructed any road or highway on the state highway system * * * or if any of their properties, in his opinion, are so located that they do or may interfere with * * * the use of such road [or] highway * * * by the traveling public, said director shall notify such individual * * * directing the removal of such obstruction or properties, or the relocation of such properties, and, if such individual * * * does not within five days from the service of such notice proceed to remove or relocate the same and complete the removal or relocation within a reasonable time, the director may remove or relocate the same * * *.
 As is clear from the above sections, once a permit has been issued and a structure is lawfully erected, the burden is upon the director of transportation, not the landowner, to determine whether, at a later date, the structure has become an impediment to travel upon the road or highway. Until such notice is given by the director to the landowner, the landowner is under no duty to remove the permitted structure unless a reasonable person in the landowner's position would conclude that the structure constitutes an "unreasonable hazard" as set forth in Manufacturer's Natl. Bank, 63 Ohio St.3d 318, paragraph two of the syllabus.
Appellants rely upon the assertion that the decorative walls fall within the present "clear zone" and right-of-way for State Route 125, thus constituting an impediment to travel. Appellants own expert admits that when the decorative walls were built in 1973, they would not have fallen within the then-existing "clear zone," if there was such a designated zone at that time. Whether the decorative walls were in conflict with present regulations would be a matter for the director of transportation to take up with appellees pursuant to R.C. 5515.02.
No notice had been given by the director of transportation to appellees that the decorative walls were an obstruction or interference with travel, or that they were in conflict with present regulations. Appellants' expert witness testified that absent such notice, it could not be assumed that appellees, as landowners, would be aware of the ODOT regulations. The decorative walls were constructed with a permit, and the duty to remove them would not arise until the director had notified appellees of violations.
Appellants argue that appellees had notice that the decorative walls were an "unreasonable hazard" because there were prior accidents involving the decorative walls and other properties along State Route 125. With regard to the other accidents along State Route 125, appellants failed to demonstrate any similarities with the present accident which would have put appellees on notice that their own structures were an unreasonable hazard. That a mailbox or telephone pole on the roadside had been hit by a vehicle in the past does not mean that appellees should have expected that the decorative walls would be hit.
Nor did appellants demonstrate that the one previous accident involving the decorative walls should have made appellees aware that the walls were an "unreasonable hazard." The prior accident occurred in 1975 and involved a drunk motorcycle rider who had lost his balance, driven off the road, and collided with one of the decorative walls when tumbling down the roadside ditch. One accident in twenty years, which involved a drunk driver, cannot be said to put appellants on notice that the decorative walls were a hazard to the general traveling public.
This conclusion is only strengthened by the trial court's finding that appellants did not show that Gabriel's deviation from the highway was foreseeable. As noted by the trial court, those courts which have addressed the issue of a landowner's liability to passing travelers in the context of a qualified nuisance have found that a deviation is not foreseeable when due to the driver's own negligence. Collier v. Redbones Tavern Restaurant, Inc.
(D.N.H. 1985), 601 F. Supp. 927; City of McAllen v. De LaGarza
(Tex. 1995), 898 S.W.2d 809; Gouge v. Central Ill. Public Serv.Co. (1991), 144 Ill.2d 535, 582 N.E.2d 108; Schrader v. GreatPlains Elec. Coop., Inc. (1994), 19 Kan. App. 2d 276, 868 P.2d 536. Had Gabriel not fallen asleep while driving, it is likely that this accident would not have occurred. Appellants have failed to show that, in light of Gabriel's own negligence while driving, his deviation was a foreseeable event.
Even when drawing all inferences in a light most favorable to appellants, we cannot say that the trial court erred by concluding that appellants failed to demonstrate that the decorative walls were unlawfully built and maintained, or that appellees had notice that the decorative walls presented an unreasonable hazard. We find that the trial court did not err in granting appellees' motion for summary judgment. Accordingly, appellants' assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and VALEN, J., concur.
[1] Paul Y. Hurier appeals individually, as administrator of the estate of his deceased wife, Constance Hurier, and as parent and next friend of his minor children, Natalie, Philip, Vincent, and Jean Luc. Gabriel and Damien Hurier, Paul's eldest sons, appeal individually, as they are both of majority age. When Paul Y., Gabriel, and Damien are referred to collectively, they will be referred to as "appellants." When referred to individually, their first names will be used.
[2] Paul and Lillie Gumm will be referred to as "appellees."